UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT VAN BEBBER, on behalf of himself and all others similarly situated and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>DIGNITY HEALTH, a California Corporation; dba MERCY MEDICAL CENTER – MERCED, and DOES 1 to 100, inclusive,<br><br>Defendants. | No. 1:19-cv-00264-DAD-EPG<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND<br><br>(Doc. No. 9) |

This matter is before the court on plaintiff Robert Van Bebber's motion to remand this action to Merced County Superior Court and to impose sanctions on defendant Dignity Health, doing business as Mercy Medical Center – Merced ("Dignity Health"), for removing the action to this federal court. (Doc. No. 9.) On May 21, 2019, that motion came before the court for hearing. Attorney Janelle Carney appeared on behalf of plaintiff, and attorney Daniel McQueen appeared on behalf of defendant. Following the hearing, the court issued an order directing the parties to submit supplemental briefing addressing the timeliness of the removal. (Doc. No. 17.) On August 15, 2019 the parties filed their supplemental briefs. (Doc. Nos. 21, 22.) Having

/////

1

considered all of the parties' briefing and heard from counsel, and for the reasons that follow, plaintiff's motion will be denied.

## BACKGROUND

Plaintiff filed his complaint in Merced County Superior Court on July 13, 2017. (Doc. No. 1-1 at 5.) On behalf of himself and all others similarly situated, as well as on behalf of the general public, plaintiff alleges multiple violations of California wage and hour statutes. (*Id.*) These include the alleged failure to pay proper wages and overtime compensation, a failure to provide for meal and rest breaks, and a violation of California's Unfair Competition Law. After proceeding in state court for roughly a year and a half, defendant removed this action to this federal court on February 22, 2019 pursuant to 28 U.S.C. § 1446(b)(3). (Doc. No. 1 at ¶ 8.) On March 22, 2019, plaintiff filed the pending motion to remand. (Doc. No. 9.) Defendant filed an opposition on May 7, 2019. (Doc. No. 13.) Plaintiff filed his reply on May 14, 2019. (Doc. No. 14.)

## LEGAL STANDARD

A defendant in state court may remove a civil action to federal court so long as that case could originally have been filed in federal court. 28 U.S.C. § 1441(a); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997). Thus, removal of a state action may be based on either diversity jurisdiction or federal question jurisdiction. *City of Chicago*, 522 U.S. at 163; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Removal jurisdiction is based entirely on federal statutory authority. *See* 28 U.S.C. § 1441 *et seq.* These removal statutes are strictly construed, and removal jurisdiction is to be rejected in favor of remand to the state court if there are doubts as to the right of removal. *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 667 (9th Cir. 2012); *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010); *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The defendant seeking removal of an action from state court bears the burden of establishing grounds for federal jurisdiction by a preponderance of the evidence. *Geographic Expeditions*, 599 F.3d at 1106–07; *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009); *Gaus*, 980 F.2d at 566–67. The district court

must remand the case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c); *see also Smith v. Mylan, Inc.*, 761 F.3d 1042, 1044 (9th Cir. 2014); *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (holding that remand for lack of subject matter jurisdiction "is mandatory, not discretionary").

**ANALYSIS**

Central to resolution of the pending motion is the question of whether, as defendant argues, plaintiff's claim for unpaid overtime is preempted by federal law. Discussion of the relevant legal framework with respect to that issue is therefore necessary.

In its answer to plaintiff's complaint, defendant asserted that some or all of plaintiff's claims "are barred and/or preempted by the Labor Management Relations Act." (Doc. No. 1-8 at 6.) In its opposition to plaintiff's motion for remand, defendant has clarified its argument that removal to federal court is appropriate because plaintiff's second cause of action for failure to pay overtime is preempted by § 301 of the Labor Management Relations Act ("LMRA"), 28 U.S.C. § 185. (Doc. No. 13 at 5.)

Ordinarily, a defendant's assertion of a federal affirmative defense to a state law claim does not render the action removable. Instead, "the presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998); *Provincial Gov't of Marinduque*, 582 F.3d at 1091. "A defense is not part of a plaintiff's properly pleaded statement of his or her claim." *Rivet*, 522 U.S. at 475. However, in the specific context of preemption under § 301 of the LMRA, the Ninth Circuit has recognized that preemption "has such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)).

Section 301 "authoriz[es] federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts." *Id.* at 1151 (citing *Allis-Chalmers Corp.*

3

*v. Lueck*, 471 U.S. 202, 210 (1985) and *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962)). As the Ninth Circuit recently explained,

> federal preemption under § 301 "is an essential component of federal labor policy" for three reasons. *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 917–18 (9th Cir. 2018) (en banc). First, "a collective bargaining agreement is more than just a contract; it is an effort to erect a system of industrial self-government." *Id.* at 918 (internal quotation marks and citations omitted). Thus, a CBA is part of the "continuous collective bargaining process." *United Steelworkers v. Enter. Wheel & Car Corp.* (*Steelworkers III*), 363 U.S. 593, 596 (1960). Second, because the CBA is designed to govern the entire employment relationship, including disputes which the drafters may not have anticipated, it "calls into being a new common law—the common law of a particular industry or of a particular plant." *United Steelworkers v. Warrior & Gulf Navigation Co.* (*Steelworkers II*), 363 U.S. 574, 579 (1960). Accordingly, the labor arbitrator is usually the appropriate adjudicator for CBA disputes because he was chosen due to the "parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment." *Id.* at 582. Third, grievance and arbitration procedures "provide certain procedural benefits, including a more prompt and orderly settlement of CBA disputes than that offered by the ordinary judicial process." *Schurke*, 898 F.3d at 918 (internal quotation marks and citations omitted).

*Curtis*, 913 F.3d at 1152.

The determination of whether a claim is preempted by § 301 is made by way of a two-step inquiry. The first question is "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law," or if instead the right is conferred by a CBA. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). If it is conferred solely by the CBA, the claim is preempted. *Id.* If not, courts proceed to the second step and ask whether the right is "nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)). Once preempted, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc.*, 482 U.S. at 393; *see also Diaz v. Sun-Maid Growers of Cal.*, No. 1:19-cv-00149-LJO-SKO, 2019 WL 1785660, at *7–8 (E.D. Cal. Apr. 24, 2019) (denying plaintiff's motion to remand after determining that plaintiff's overtime claim was preempted by § 301).

/////

4

**A.     Timeliness of Removal**

Before resolving the question of whether the overtime claim brought in this case is preempted, the court first addresses plaintiff's argument that defendant's removal of the action from state court was untimely. (Doc. No. 9-1 at 18.) Generally speaking, removal of a civil action or proceeding must be filed within 30 days after receipt by the defendant of a copy of the initial pleading. 28 U.S.C. § 1446(b)(1). However, a separate provision of that statute provides that "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Defendant argues in its opposition brief that the Ninth Circuit's January 25, 2019 decision in *Curtis v. Irwin Industries, Inc.* constitutes an "order or other paper" for purposes of § 1446(b)(3), and that because its notice of removal was filed less than 30 days after the decision in *Curtis* was issued, the removal of this case to federal court is timely. (Doc. No. 13 at 18.)

The dispute in *Curtis* centered on the interaction between California Labor Code §§ 510, 514, and the relevant CBA. In this respect, *Curtis* addressed an issue already ruled upon by the Ninth Circuit in *Gregory v. SCIE, LLC*, 317 F.3d 1050 (9th Cir. 2003). The issue in both cases was whether § 510 governs a claim for inadequate overtime pay when the employee is covered by a CBA, or if instead the CBA itself controls. Section 510 states that "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." Cal. Lab. Code § 510. Section 514 of the California Labor Code provides, however, that § 510 does not apply "to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked." *Id.* § 514. In other words, where the CBA contains rules governing overtime (among other things), those rules effectively displace the relevant provisions of the California Labor Code. Employing the inquiry

from *Burnside* discussed above, the question in both *Curtis* and *Gregory* was whether the plaintiff's overtime claim was dependent on application of state law, or if instead the claim required application of the collective bargaining agreement. *See Curtis*, 913 F.3d at 1155; *Gregory*, 317 F.3d at 1052–53. If the latter, plaintiff's claims are preempted by § 301 of the LMRA, and jurisdiction was proper in federal court.

The Ninth Circuit in *Gregory* concluded that the question of whether an employee has received adequate overtime pay must be resolved by reference to state law rather than to the CBA. The court concluded that California Labor Code § 510 acted as a baseline with respect to payment of overtime, such that any CBA was required to provide overtime benefits at least as generous as those required under § 510. *See Gregory*, 317 F.3d at 1053 ("Even assuming the CBA provides premium wage rates for overtime, the question here is the same as that raised by Section 510: whether when overtime is paid under the CBA it is paid for all overtime hours worked, as required by California law."). Thus, resolution of plaintiff's claim in *Gregory* was found to require reference only to § 510 rather than the applicable CBA, and the plaintiff's state law claim was not transformed into a federal claim on the basis of preemption. (*Id.*)

In *Curtis*, however, the Ninth Circuit rejected this conclusion, holding that if a CBA meets the requirements of § 514, overtime claims are controlled by the CBA rather than by § 510, and are therefore preempted. *Curtis*, 913 F.3d at 1155. The Ninth Circuit in *Curtis* did not base its holding in this regard upon a mere disagreement with the interpretation set forth in *Gregory*.[1] Instead, the court in *Curtis* found that an intervening decision by the California Court of Appeal had effectively rejected *Gregory*'s interpretation of § 510. *See Curtis*, 913 F.3d at 1154–55 (citing *Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 107 (2014) and *Flowers v. L.A. Cty. Metro Transp. Auth.*, 243 Cal. App. 4th 66, 85 (2015)). Acknowledging the rule that "federal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently," *Owen ex rel.*

---

[1] Both *Gregory* and *Curtis* were decided by three-judge panels of the Ninth Circuit. Of course, three-judge panels are prohibited from overruling the decisions of prior three-judge panels. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (*en banc*).

*Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983), and finding no indication that the California Supreme Court would do so, the court in *Curtis* concluded that "*Gregory* was overruled by intervening California case law." *Id.* at 1155. As a result, the Ninth Circuit in *Curtis* found that § 510 did not govern plaintiff's overtime claim, and therefore that removal to federal court was proper. *Id.*

As noted above, the decision in *Curtis* was issued on January 25, 2019, and defendant filed a notice of removal in this case on February 22, 2019. (Doc. No. 1.) However, this case was originally filed in state court in 2017. Notwithstanding that a defendant must generally remove an action within thirty days after receipt of the initial pleading, *see* 28 U.S.C. § 1446(b)(1), defendant contends that removal is proper and was timely here under § 1446(b)(3) because the Ninth Circuit's decision in *Curtis* constitutes an "order or other paper" under that provision.

In their original briefing on the pending motion, the parties merely touched on the question of whether an order issued in a separate action can constitute an "order or other paper" as that term is used in § 1446(b)(3). The apparently unanimous view of federal courts outside the Ninth Circuit is that a decision such as the one in *Curtis* cannot constitute an "order or other paper" for purposes of removal. As one district court has explained,

> [a]s a general rule, a decision in an unrelated lawsuit is not an order or other paper within § 1446(b) and, therefore, does not trigger the thirty day period for filing a notice of removal. Rather, the words 'an amended pleading, motion, order or other paper' are thought to refer only to documents in the same case, i.e., the case being removed.

*McCormick v. Excel Corp.*, 413 F. Supp. 2d 967, 970 (E.D. Wis. 2006) (citing *Morsani v. Major League Baseball*, 79 F. Supp. 2d 1331, 1333 (M.D. Fla. 1999), and *Kocaj v. Chrysler Corp.*, 794 F. Supp. 234, 237 (E.D. Mich. 1992)); *see also, e.g.*, *Ruiz v. Carnival Corp.*, No. 11-23170-CIV, 2012 WL 626222, at *2 (S.D. Fla. Feb. 24, 2012) ("A subsequent court decision in an unrelated case does not normally constitute a basis for removal."); *Lozano v. GPE Controls*, 859 F. Supp. 1036, 1038 (S.D. Tex. 1994) ("'Other paper' within the meaning of § 1446(b) refers to papers that are generated within the specific state proceeding which has been removed to federal

7

court."). This interpretation is consistent with the relevant legislative history, in which the Senate Committee on the Judiciary noted that it intended the term "other paper . . . to include deposition transcripts, discovery responses, settlement offers and other documents or occurrences that reveal the removability of a case." S. REP. NO. 109-14, at 9 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 10; *see also Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 78 (1st Cir. 2014) (holding, on the basis of this legislative history, that "correspondence from the plaintiff to the defendant concerning damages can constitute an 'other paper' for purposes of Section 1446(b)(3)."). In other words, the statutory language appears to have been designed to encompass various documents which might be created or discovered during the course of litigation.

Indeed, the only case cited by defendant reached a conclusion similar to that set forth in the cases discussed above, holding that "the plain language of the statute . . . include[s] papers filed by co-defendants among the 'other papers' that may trigger a removal period." *Vagle v. Archstone Communities, LLC*, No. CV 14-03476 RGK AJWX, 2014 WL 2979201, at *4 (C.D. Cal. July 1, 2014). In short, none of these authorities contemplates the reading of "other paper" that defendant proposes here.

Defendant contends that the Ninth Circuit's decision in *Curtis* is itself an "other paper," even though that decision was issued in separate litigation with no apparent relation to the action now before the court. However, the text of § 1446(b)(3) does not suggest that the term "other paper" should be interpreted in this manner. As one district court has noted, application of recognized canons of statutory construction suggests that the phrase "other paper" should be confined solely to materials filed within the same litigation:

> The terms order or other paper are part of a series and follow the terms "amended pleading" and "motion." Applying the principle of ejusdem generis, whereby the court consults the context in which words appear to resolve ambiguity, order and other paper are best understood as sharing a common characteristic with amended pleading and motion, namely that they are documents in the case under review.

*McCormick*, 413 F. Supp. 2d at 970–71. The Third Circuit has embraced a slightly broader version of this rule, holding that an intervening Supreme Court case constituted an "order or other paper" even though it arose from a different action because both cases involved the same

8

| | |
|---|---|
| 1 | defendant, and "the litigation in the Supreme Court tracked the factual scenario of the challenged |
| 2 | removal cases." *Doe v. Am. Red Cross*, 14 F.3d 196, 202 (3d Cir. 1993); *see also Green v. R.J.* |
| 3 | *Reynolds Tobacco Co.*, 274 F.3d 263, 268 (5th Cir. 2001) (adopting the Third Circuit's rule). At |
| 4 | the very least, however, all of these cases required some nexus between the "other paper" and the |
| 5 | case at hand before finding that the action was removable under § 1446(b)(3). *See* Charles Alan |
| 6 | Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3731 (Rev. 4th ed. 2019) ("[T]he |
| 7 | publication of opinions by other courts dealing with subjects that potentially could affect a state- |
| 8 | court suit's removability, and documents not generated within the state litigation generally are not |
| 9 | recognized as 'other papers,' that can start a 30-day removal period under Section 1446(b)."). |
| 10 | Notably, defendant fails to suggest any connection between the *Curtis* case and this action that |
| 11 | would permit removal under this somewhat broader interpretation of the rule. |
| 12 | The Ninth Circuit has adopted this approach as well. In *Peabody v. Maud Van Cortland* |
| 13 | *Hill Schroll Trust*, 892 F.2d 772 (9th Cir. 1989), the court considered whether a motion for |
| 14 | summary judgment filed in a separate action could constitute "other paper" for the purposes of |
| 15 | determining whether a case became newly removable. The Ninth Circuit held that it could not, |
| 16 | reasoning that the summary judgment papers filed in that separate case "never became part of the |
| 17 | state court record." *Peabody*, 892 F.2d at 775. Because "the record of the state court is |
| 18 | considered the sole source from which to ascertain whether a case originally not removable has |
| 19 | since become removable," and because nothing in that state court case rendered the case |
| 20 | removable for the first time, the petition for removal was untimely. *Id.* Numerous courts have |
| 21 | expressed the understanding that the decision in *Peabody* as in keeping with the well-recognized |
| 22 | general rule that orders issued in unrelated cases do not constitute "other paper" for purposes of |
| 23 | removal under § 1446(b)(3). *See, e.g.*, *Salmonson v. Euromarket Designs, Inc.*, No. CV 11-5179 |
| 24 | PSG PLAX, 2011 WL 4529396, at *3 (C.D. Cal. Sept. 28, 2011) (relying on the decision in |
| 25 | *Peabody* to reject the notion "that a paper filed in federal court may trigger § 1446(b)'s second |
| 26 | thirty-day removal period," because that paper was filed in a different action); *Black v. Brown &* |
| 27 | *Williamson Tobacco Corp.*, No. 4:05CV01544 ERW, 2006 WL 744414, at *5 (E.D. Mo. Mar. 17, |
| 28 | ///// |

9

2006) (citing *Peabody* for the proposition that "[t]he majority of cases hold that a court decision in a separate case does not constitute 'other paper'").

The court acknowledges that a more recent Ninth Circuit decision is arguably in tension with *Peabody*. In *Rea v. Michaels Stores Inc.*, 742 F.3d 1234 (9th Cir. 2014), the court addressed a scenario nearly identical to the one presented in this case. There, a class action proceeding in state court contained a damages waiver, in which the complaint sought damages totaling no more than $4,999,999.99. *Rea*, 742 F.3d at 1238. This waiver was employed as a strategic device by plaintiff to avoid federal jurisdiction since, under the Class Action Fairness Act, the case would have been removable to federal court only if potential damages exceeded $5,000,000.00. *See* 28 U.S.C. § 1332(d)(2). Ninth Circuit law at the time the action was filed in state court was clear that such damages waivers were valid and effective to deprive a federal court of jurisdiction unless the defendant could prove to a "legal certainty" that damages exceeded $5,000,000.00. *See Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 996 (9th Cir. 2007). Subsequently, and while the action was ongoing before the state court, the United States Supreme Court held that such damage waivers are ineffective to defeat removal under CAFA, thereby abrogating the decision in *Lowdermilk*. *See Standard Fire Ins. v. Knowles*, 568 U.S. 588, 596 (2013). Immediately thereafter, the defendants in *Rea* removed the class action from state court to federal court, arguing that the case was now removable due to an intervening change in law. The Ninth Circuit agreed, holding that because Ninth Circuit law did not permit removal at the time the defendant was served with the complaint, the complaint did not "affirmatively reveal on its face the facts necessary for federal court jurisdiction" at the time defendants received it. *Rea*, 742 F.3d at 1238 (internal quotation marks and brackets omitted). Because the case became removable only after the Supreme Court issued its decision in *Standard Fire*, defendants were permitted a further thirty day period in which to properly remove the action under § 1446(b)(3).

This court is bound by decisions of the Ninth Circuit and must therefore harmonize the decisions in *Rea* and *Peabody* if it is possible to do so. On the one hand, in *Peabody* the Ninth Circuit held that only documents contained within the state court record could constitute an "order or other paper" in determining whether the case is newly removable under § 1446(b)(3).

10

On the other hand, the Ninth Circuit in *Rea* permitted the defendant to remove the action to federal court more than thirty days after the defendant received the operative pleading due to the legal effect of the Supreme Court's subsequent decision in *Standard Fire*, notwithstanding that the *Standard Fire* case had no relationship to the litigation in *Rea*. Under a straightforward application of *Peabody*, the Supreme Court's decision in *Standard Fire* could not amount to an "order or other paper" because it was not filed in the same litigation. As noted at the outset of this order, the court requested and received supplemental briefing from the parties addressing this issue. (Doc. Nos. 21, 22.)

While it remains unclear how these two decisions are to be reconciled, *Rea* suggests a solution predicated on a previous decision of the Ninth Circuit. *See Rea*, 742 F.3d at 1238 (citing *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1124 (9th Cir. 2013)). In *Roth*, the plaintiff filed a wage-and-hour class action in state court in 2011. *Roth*, 720 F.3d at 1123. More than a year later, defendants removed the action to federal court, invoking diversity jurisdiction. *Id.* Removal was not based on "other paper" filed in the case—rather, the defendants had conducted their own investigation and determined that one of the putative class members resided in another state during the relevant class period, making the parties minimally diverse for purposes of CAFA. *Id.* at 1123, 1125; *see also* 28 U.S.C. § 1332(d)(2)(A) (providing district courts with original jurisdiction in a class action valued at over $5,000,000.00 where "any member of a class of plaintiffs is a citizen of a State different from any defendant"). Plaintiffs argued that removal was improper as untimely under § 1446(b)(1) because it was filed more than thirty days after they were served with the initial pleading, and was also untimely under § 1446(b)(3) because defendants had not received any "other paper" which would render the case newly removable. At least implicitly, the Ninth Circuit in *Roth* agreed but nonetheless concluded that removal was proper because those two provisions were not the "exclusive authorizations for . . . removal." *Roth*, 720 F.3d at 1124. The court held that unless those provisions are triggered and ignored by a defendant, that defendant "may remove to federal court when it discovers, based on its own investigation, that a case is removable." *Id.* at 1123; *see also Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 147 (2d Cir. 2014) (adopting the approach in *Roth* and

noting that "Section 1446(b) imposes a time limit only in cases in which the plaintiff's initial pleading or subsequent document has explicitly demonstrated removability. Defendants are permitted to remove outside of these periods when the time limits of 28 U.S.C. § 1446(b) are not triggered."); *Graiser v. Visionworks of America, Inc*., 819 F.3d 277, 285–86 (6th Cir. 2016). "In other words, as long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30–day time period never starts to run and the defendant may remove at any time." *Rea*, 742 F.3d at 1238 (quoting 28 U.S.C. § 1446(b)(3)).

Under this line of authority, defendant's removal of this action to this federal court is timely. Although inaccurately styled as removal pursuant to § 1446(b)(3) (*see* Doc. No. 1 at ¶ 8), that provision is, in fact, inapplicable here. Contrary to defendant's argument, *Curtis* does not constitute an "order or other paper" because it "never became part of the state court record." *Peabody*, 892 F.2d at 775. Instead, *Curtis* is more akin to the fruit of defendant's investigation, and the holding in that case revealed for the first time that this action was removable on the basis of federal question jurisdiction. *See* 28 U.S.C. § 1441(a). That the "investigation" (i.e. the discovery of new case law) in this case was legal rather than factual, as it was in *Roth*, is of no importance. In the undersigned's view, only by adopting this interpretation can the Ninth Circuit's decisions in *Rea* and *Peabody* be harmonized. Accordingly, because the court finds that the time limits under § 1446(b)(1) and (3) were never triggered in this case, it also concludes that defendant's removal of this action to this federal court was timely.

The court acknowledges that the concerns expressed in plaintiff's supplemental briefing, that "gamesmanship . . . can take place if defendants delay filing a notice of removal until it is strategically advantageous to do so" (Doc. No. 22 at 5), are legitimate. However, there is no evidence of such gamesmanship in this particular case—defendant removed within thirty days after the Ninth Circuit's decision in *Curtis* was issued. It is certainly conceivable that an unscrupulous defendant who is aware of a case's removability could delay removal "until the state court has shown itself ill-disposed to defendant, or until the eve of trial in state court[.]" *Roth*, 720 F.3d at 1126. However, the Ninth Circuit considered this objection but reasoned that a

plaintiff could obviate the potential for strategic behavior by "provid[ing] to the defendant a document from which removability may be ascertained." *Id.* Plaintiff's argument in this regard therefore provides no basis upon which to conclude that defendant's removal of this action was untimely.

**B.     Preemption of Plaintiff's Claims**

Having found removal timely, the court next examines whether this court has jurisdiction over plaintiff's claims. Plaintiff argues that remand is warranted here because the claim for overtime under California Labor Code § 510 is wholly divorced from the terms of the relevant CBA, and is therefore not preempted by § 301 of the LMRA. (Doc. No. 9-1 at 14–15.) Defendant disagrees, arguing that this case is indistinguishable from *Curtis* and is therefore properly in federal court. (Doc. No. 13 at 9–13.)

As noted above, the first step in the § 301 preemption analysis is to determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law," or if instead the right is conferred by a CBA. *Burnside*, 491 F.3d at 1059. "If [plaintiff's] CBAs in this case meet the requirements of section 514, [plaintiff's] right to overtime 'exists solely as a result of the CBA,' and therefore is preempted under § 301." *Curtis*, 913 F.3d at 1154 (quoting *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016)). In arguing that plaintiff's cause of action for overtime pay involves a right conferred by a CBA, defendant submits the declaration of Satvir Arias, Director of Human Resources at Dignity Health. (Doc. No. 13-1 ("Arias Decl.") at ¶ 1.) Arias is presently assigned to work at Mercy Medical Center ("MMC"), where the named plaintiff and the putative class members also worked. (*Id.*; Doc. No. 1-1 at 11–12.) According to that declaration, Arias was responsible for overseeing MMC's personnel policies. (Arias Decl. at ¶ 2.) As part of that duty, Arias oversaw the contractual policies that were negotiated with the two unions that represent nearly all of MMC's hourly employees, the California Nurses Association and the American Federation of State, County and Municipal Employees Local 2703. (*Id.*) Arias avers that nearly all hourly employees working at MMC, including named plaintiff Van Bebber, were unionized during the relevant time periods. (*Id.* at ¶ 4.) Specifically, since July 13, 2013, the wages, hours, and working conditions of these

13

unionized employees were expressly governed by no fewer than four distinct CBAs, each of which is attached to the Arias Declaration. (*Id.*) These CBAs "cover[] everything from holiday pay, shift differentials, . . . staffing levels, . . . promotions, discharge, and discipline." (*Id.*)

In moving to remand this action, plaintiff does not contest the validity of these CBAs, nor does he contest that he was in fact covered by them. The only remaining issue is whether those CBAs satisfy the requirements of California Labor Code § 514. As noted above, under that provision, California Labor Code § 510 (which governs the payment of overtime) does not apply "to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514. Where these requirements are satisfied, a plaintiff's claim for overtime under § 510 is displaced, and the "claim . . . is controlled by [plaintiff's] CBAs." *Curtis*, 913 F.3d at 1155. In that event, plaintiff's second cause of action for overtime pay is preempted, and the action is properly in federal court.

Having reviewed the CBAs attached to the Arias Declaration, the court concludes that defendant has demonstrated by a preponderance of the evidence that plaintiff's claim for overtime pay is preempted by § 301 of the LMRA. According to the language of § 514, all four CBAs contain sections delineating wages, hours of work, and working conditions. (Arias Decl., Ex. A at 52–56; Ex. B at 126–29; Ex. C at 158–68; Ex. D at 245–58.) Each CBA also contains a section specifically providing for premium rates of pay for overtime hours worked. (*Id.* Ex. A at 53–54; Ex. B. at 127–28; Ex. C at 162–65; Ex. D at 249–51.) Finally, the Arias Declaration avers that each CBA provides for an hourly rate of pay at least 30 percent more than the then-applicable state minimum wages. (*Id.* at ¶ 4.)

Plaintiff does not challenge any of these conclusions. Instead, plaintiff argues generally that remand is warranted because all of plaintiff's claims are "California statutory wage rights which may be maintained independent of the existence of any CBA, as these rights do not evolve from the CBA and cannot be waived or negotiated away by a CBA." (Doc. No. 9-1 at 14–15.)

14

This reasoning is directly contrary to the California Court of Appeal's decision in *Vranish*, which plaintiff has failed to address in either his motion or his reply. In *Vranish* the state appellate court recognized that certain rights *can* be negotiated away by a CBA, and that § 514 contemplates precisely such an arrangement. The logic underlying the state court's holding in *Vranish* is straightforward: because unions are large, sophisticated organizations and can be expected to ably represent their members, they are given flexibility to contract around various provisions of the California Labor Code to the extent they believe that doing so is in the best interests of their union members. *See Curtis*, 913 F.3d at 1154 (noting that "the California legislature deemed it appropriate to allow unionized employees to contract around section 510(a)'s requirements"); *Vranish*, 223 Cal. App. 4th at 111 ("Employees, such as plaintiffs, represented by a labor union, have sought and received alternative wage protections through the collective bargaining process. When there is a valid collective bargaining agreement, employees and employers are free to bargain over not only the *rate* of overtime pay, but also *when* overtime pay will begin.") (internal quotation marks, citation and brackets omitted); *see also Flowers*, 243 Cal. App. 4th at 85 ("*Vranish* is controlling authority with regard to the issue presented here. The MTA is only required to pay a premium for overtime worked as defined in the parties' CBA.").

      The court is also unpersuaded by the suggestion that preemption is inapplicable where, as here, the operative complaint "never mentions the CBAs." (Doc. No. 9-1 at 10.) In his attempt to avoid application of the LMRA, plaintiff has understandably constructed his pleadings so as to avoid any reference to the CBAs, and to instead ground his claim solely in California state law. Such artful pleading is ineffective in the face of the evidence submitted by defendant, which affirmatively establishes that plaintiff and the class members were subject to the CBAs, and that these CBAs meet the requirements of § 514. Because § 514 applies, any cause of action brought by plaintiff seeking lost overtime cannot be based on § 510, but must rest exclusively on the CBAs themselves. Therefore, plaintiff's overtime claim is preempted under "step one" of the

/////

/////

/////

§ 301 preemption analysis, and the court need go no further in its analysis of the issue. Accordingly, plaintiff's motion to remand will be denied.[2]

**C.      Supplemental Jurisdiction**

Having found that jurisdiction lies in this court by virtue of § 301 of the LMRA, the court next considers whether it may exercise supplemental jurisdiction over plaintiff's remaining claims. *See* 28 U.S.C. § 1367(a); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (holding that to exercise supplemental jurisdiction, "[t]he state and federal claims must derive from a common nucleus of operative fact").

Defendant's request that the court exercise supplemental jurisdiction (Doc. No. 13 at 17–18) will be granted. All of plaintiff's remaining causes of action allege similar violations of California's wage and hour laws, or allege violations of California's Unfair Competition Law. Even more significantly, all of plaintiff's claims appear to arise out of the same employment relationship that gives rise to plaintiff's overtime claim. Declining to exercise supplemental jurisdiction under these circumstances could result in parallel proceedings regarding the same nucleus of operative facts, one in state court and the other in federal court. Such an outcome would inconvenience the parties, unnecessarily expend scarce judicial resources, and create the potential for inconsistent judgments. *See Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997); *Driesen v. First Revenue Assurance*, LLC, No. CV 10-8061-PCT-MHM, 2010 WL 5090363, at *2 (D. Ariz. Dec. 8, 2010); *Kinder v Citibank*, No. 99-CV-2500 W (JAH), 2000 WL 1409762, at *4 (S.D. Cal. Sept. 14, 2000) (stating that requiring the parties to maintain separate suits in state and federal court would "undermine the purposes of supplemental jurisdiction").

The court will therefore exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over plaintiff's remaining causes of action brought in this case.

/////

/////

---

[2] For the same reason, plaintiff's request to impose sanctions against defendant for removing this action must be denied.

16

**CONCLUSION**

For the reasons set forth above, plaintiff's motion for remand and motion for sanctions (Doc. No. 9) is denied.

IT IS SO ORDERED.

Dated: **August 30, 2019**

*/s/ Dale A. Drozd*
UNITED STATES DISTRICT JUDGE