1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  | ROBERT VAN BEBBER, on behalf of        | Case No. 1:19-cv-00264-DAD-EPG
12  | himself and all others similarly situated |
    | and the general public,                 | FINDINGS AND RECOMMENDATIONS
13  |                                         | RECOMMENDING THAT PLAINTIFFS'
    |                 Plaintiff,              | MOTION FOR LEAVE TO FILE A THIRD
14  |                                         | AMENDED COMPLAINT BE DENIED AND
    |          v.                             | THAT PLAINTIFFS' MOTION FOR CLASS
15  |                                         | CERTIFICATION BE GRANTED IN PART
    | DIGNITY HEALTH, a California            | AND DENIED IN PART
16  | Corporation, dba MERCY MEDICAL          |
    | CENTER—MERCED, and DOES 1 to            | (ECF. No. 35, 45)
17  | 100, inclusive,                         |
    |                                         | OBJECTIONS, IF ANY, DUE WITHIN
18  |                 Defendants.             | FOURTEEN (14) DAYS

19          Currently pending before the Court are a motion for leave to file a Third Amended

20  Complaint (ECF No. 35) and a motion for class certification (ECF No. 45) filed by Plaintiffs

21  Robert Van Bebber, Rachel Clover, and Martha Ochoa ("Plaintiffs"). District Judge Dale A.

22  Drozd referred the motions to the undersigned for issuance of findings and recommendations.

23  (ECF Nos. 28, 58.) For the following reasons, the Court recommends that Plaintiffs' motion for

24  leave to amend be denied and Plaintiffs' motion for class certification be granted in part and

25  denied in part.

26  ///

27  ///

28  ///

## I.      BACKGROUND

### A.      Plaintiffs' Claims

This is a wage-and-hour class action suit stemming from various alleged state labor law violations by Defendant Dignity Health ("Defendant"), an acute care hospital in Merced, California. (*See* ECF No. 1-29.)

Plaintiff Robert Van Bebber initiated this action by filing a proposed class action complaint in the Superior Court for the County of Merced on July 13, 2017. (ECF Nos. 1-1, 1-2, 1-3.) The complaint alleged multiple violations of California wage and hour statutes on behalf of Robert Van Bebber individually and all others similarly situated, as well as on behalf of the general public. (*Id.*) Plaintiff Van Bebber filed a First Amended Complaint on September 13, 2017, and a Second Amended Complaint on January 14, 2019, adding Rachel Clover and Martha Ochoa as Plaintiffs. (ECF Nos. 1-4, 1-29.) The operative Second Amended Complaint alleges causes of action for: 1) Violation of Business and Professions Code §§ 17200, et seq.; 2) Failure to Pay All Wages (Labor Code §§ 200, et seq., 218, 226, 510, 511, 1194, 1198, and 2802); 3) Failure to Pay All Wages Due to Illegal Rounding; 4) Failure to Provide Meal Breaks (Labor Code §§ 226.7 and 512, et seq.); 5) Inaccurate Wage Statements (Labor Code § 226); 6) Violation of Labor Code §§ 200, et seq.; 7) Failure to Provide Rest Breaks (Labor Code § 226.7; Wage Order 5); and 8) Waiting Time Penalties (Labor Code § 200, et seq.) (ECF No. 1-29.)

### B.      Removal to Federal Court

Defendant filed a notice of removal on February 22, 2019. (ECF No. 1.) On March 22, 2019, Plaintiffs filed a motion to remand this case to state court. (ECF No. 9.) On August 30, 2019, District Judge Drozd entered an order denying Plaintiffs' motion for remand. (ECF No. 23.) The order reasoned, in relevant part, that Plaintiffs' claim for failure to pay overtime is preempted by § 301 of the Labor Management Relations Act ("LMRA"). (*Id.*)

On February 4, 2020, District Judge Drozd issued a Standing Order in Light of Judicial Emergency in the Eastern District of California. (ECF No. 28.) The standing order explained that District Judge Drozd was now the only active district judge in this division and implemented certain emergency procedures. (*Id.*) Among other things, the standing order referred motions for

1   class certification pursuant to Federal Rule of Civil Procedure 23 to the magistrate judge assigned

2   to the case. (*Id.*)

3       **C.     Plaintiffs' Motion for Leave to Further Amend Complaint**

4       On June 8, 2020, Plaintiffs filed their motion for leave to file a Third Amended

5   Complaint. (ECF No. 35.) According to the motion, Plaintiffs seek to amend the operative

6   complaint to add a Fair Labor Standards Act ("FLSA") claim pursuant to 29 U.S.C. § 201 et seq.

7   due to District Judge Drozd's order finding that the LMRA preempted Plaintiffs' state law

8   overtime claims because the new FLSA claims are not preempted. (ECF No. 35-1 at 6-7.) Further,

9   Plaintiffs seek to amend the complaint to include two additional subclasses for Defendant's

10  failure to properly calculate the regular rate for purposes of missed meal and rest period claims.

11  (*Id.*) Defendant filed an opposition on June 23, 2020, and Plaintiffs filed a reply on June 30, 2020.

12  (ECF Nos. 39, 40.) District Judge Drozd entered an order on January 25, 2021, referring

13  Plaintiffs' motion for leave to amend to the undersigned for issuance of findings and

14  recommendations. (ECF No. 58.)

15      This motion is now pending before this Court for issuance of findings and

16  recommendations.

17      **D.     Defendant's Motion for Partial Summary Judgment**

18      Defendant filed a motion for partial summary judgment on August 26, 2020. (ECF No.

19  43.) Defendant's motion seeks judgment on Plaintiffs' claim for unpaid wages due to illegal

20  rounding, arguing that Defendant's practice of rounding time entries to the nearest quarter-hour is

21  lawful because it is neutral on its face and as applied. (*Id.*) Plaintiffs filed an opposition to the

22  motion for partial summary judgment on September 22, 2020, and Defendant filed a reply on

23  September 28, 2020. (ECF Nos. 46, 47.)

24      The motion for summary judgment is now pending before District Judge Drozd.

25      **E.     Plaintiffs' Motion for Class Certification**

26      On September 4, 2020, Plaintiffs filed their motion for class certification. (ECF No. 45.)

27  The proposed overarching main class is defined as "[a]ll non-exempt hourly employees of

28  Defendant who worked at the Mercy Medical Center Merced facility at least one (1) day from

July 13, 2013 through the date of class certification order." (*Id.* at 2.) Specifically, Plaintiffs seek

certification of following classes and subclasses:[1]

> **Class 1:**
> All non-exempt hourly employees of Defendant who worked at the Mercy Medical Center Merced facility at least one (1) day of more than eight (8) hours in a day or more than forty (40) hours in a week from July 13, 2013 through the date of class certification order and who worked overtime and earned additional pay during the overtime week, and were not paid premium overtime and/or double time at the employee's regular rate of pay. ("Regular Rate/Overtime Class");

> **Class 2:**
> All non-exempt hourly employees of Defendant who worked at least one (1) day at the Mercy Medical Center Merced facility from July 13, 2013 to the date of the class certification order and who were paid pursuant to Defendant's rounding policy and practice. ("Rounding Class").

> **Sub-Class 1:**
> All non-exempt hourly clinical employees of Defendant who worked at least one (1) day at the Mercy Medical Center Merced facility from July 13, 2013 to the date of the class certification order and who were paid pursuant to Defendant's rounding policy and practice. ("Rounding Clinical Sub-Class").

> **Class 3:**
> All non-exempt hourly patient care employees of Defendant who worked at least one (1) day at the Mercy Medical Center Merced facility and worked at least one (1) standby shift from January 14, 2015 to the date of the class certification order. ("On Call/Standby Class").

> **Class 4:**
> All non-exempt hourly employees of Defendant who worked at least one (1) day at the Mercy Medical Center Merced facility from July 13, 2013 through the date of class certification order who were not provided legally-compliant second meal period breaks when working more than a ten (10) hour shift ("Second Meal Break Class");

> **Sub-Class 2:**
> All hourly non-exempt employees of Defendant who worked at Mercy Medical Center Merced facility at least one (1) day from July 13, 2013 through date of class certification order, who signed a written meal period waiver. ("Meal Period Waiver Sub-class");

> **Sub-Class 3:**
> All non-exempt hourly clinical employees of Defendant who worked at least one (1) day at the Mercy Medical Center Merced facility from July 13, 2013 through the date of class certification order who were not provided legally-compliant second meal period breaks. ("Meal Break Sub-Class");

---

[1] Plaintiffs have not indicated that there are any members of the proposed overarching main class that do not fall within one of the classes and subclasses, and the parties' briefing did not address certification of the overarching main class. Therefore, the Court will only consider certification of the proposed classes and subclasses. *See Aldapa v. Fowler Packing Co., Inc.,* 323 F.R.D. 316, 324 fn.2 (E.D. Cal. 2018), *order clarified,* 2018 WL 10322910 (E.D. Cal. Feb. 16, 2018) (declining to certify main class where plaintiffs had not indicated that there were any members of the main class that did not fall within one of the subclasses).

**Sub-Class 4:**
All California employees who worked for Defendant from July 13, 2013 through the date of class certification order who were paid a missed meal period payment in a week that the employee also received a non-discretionary bonus or other type of pay along with their regular wages. ("Meal Period Regular Rate Sub-Class);

**Class 5:**
All non-exempt hourly employees of Defendant who worked at least one (1) day at the Mercy Medical Center Merced facility from July 13, 2016 through the date of class certification order who were provided a paystub (a.k.a. wage statement) from Defendant ("Pay Stub Class"). (This is a derivative class for all classes and sub-classes).

**Class 6:**
All non-exempt hourly clinical employees of Defendant who worked at least one (1) day at Mercy Medical Center Merced facility at any time from January 14, 2015 through the date of class certification, who were not provided with 10-minute rest periods for every 4 hours of work or major fraction thereof. ("Rest Break Class")

**Sub-Class 5:**
All California employees who worked for Defendant from July 13, 2013 through the date of class certification order who were paid a missed rest period payment in a week that the employee also received a non-discretionary bonus or other type of pay along with their regular wages. ("Rest Period Regular Rate Sub-Class);

**Class 7:**
All California based non-exempt hourly employees of Defendant who worked for Defendant at any time from January 14, 2016 through the date of class certification, who are no longer employed by Defendant and were not paid all their earned wages. ("Waiting Time Penalty Class"). (This is a derivative class for all classes and sub-classes).

(*Id.* at 2-5.) (Footnotes omitted.)

Proposed subclasses 4 and 5, the Meal Period Regular Rate Sub-Class and Rest Period Regular Rate Sub-Class, are not included in Plaintiffs' operative complaint and are the subject of Plaintiff's motion for leave to amend. (ECF No. 45 at 4; *see also* ECF No. 1-29.)

Defendant filed an opposition to the motion for class certification on November 17, 2020, and Plaintiffs filed a reply on January 18, 2021. (ECF Nos. 53, 57.)

This motion is also now pending before this Court for issuance of findings and recommendations.

**F.      Hearing on Motions to Amend and for Class Certification**

On January 29, 2021, the Court held a hearing via Zoom video conference on the motion for leave to amend and the motion for class certification. (ECF No. 29.) Counsel Janelle Carney

5

1   and Adam Rose appeared on behalf of Plaintiffs and counsel Richard Simmons and Daniel

2   McQueen appeared on behalf of Defendant. (*Id.*)

3       **II.      MOTION TO AMEND**

4       The Court begins with Plaintiffs' motion for leave to file a Third Amended Complaint to

5   add a new claim under the FLSA and to add two new subclasses. (ECF No. 35.)

6       **A.      Legal Standards**

7       Federal Rule of Civil Procedure 15(a) permits a party to amend a pleading once as a

8   matter of course within twenty-one days of service, or if the pleading is one to which a response

9   is required, twenty-one days after service of a motion under Rule 12(b), (e), or (f). Fed. R. Civ. P.

10  15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's

    written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

11      The Federal Rules of Civil Procedure provide that leave to amend pleadings "shall be

12  freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, granting or denying

13  leave to amend a complaint is in the discretion of the Court. *Swanson v. United States Forest

14  Service*, 87 F.3d 339, 343 (9th Cir. 1996). Discretion over amendment is particularly broad where

15  a party has already had one or more opportunities to amend their complaint. *DCD Programs, Ltd.

16  V. Leighton,* 833 F.2d 183, 186 n. 3 (9th Cir. 1987) (citations omitted). "In deciding whether

17  justice requires granting leave to amend, factors to be considered include the presence or absence

18  of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous

19  amendments, undue prejudice to the opposing party and futility of the proposed amendment."

20  *Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 537 (9th Cir. 1989) (citing *Foman v.

21  Davis,* 371 U.S. 178, 182 (1962); *DCD Programs, Ltd.,* 833 F.2d at 186 ).

22      "Prejudice to the opposing party is the most important factor." *Jackson v. Bank of Haw.*,

23  902 F.3d 1385, 1397 (9th Cir. 1990) (citing *Zenith Radio Corp. v. Hazeltine Research Inc.*, 401

24  U.S. 321, 330–31 (1971)). "The party opposing leave to amend bears the burden of showing

25  prejudice." *Serpa v. SBC Telecomms.*, 318 F. Supp. 2d 865, 870 (N.D. Cal. 2004) (citing *DCD

26  Programs, Ltd.*, 833 F.2d at 187); *see Clarke v. Upton*, 703 F. Supp. 2d 1037, 1041 (E.D. Cal.

    2010); *see also Alzheimer's Inst. of Am. v. Elan Corp.*, 274 F.R.D. 272, 276 (N.D. Cal. 2011).

27  ///

28

                                                6

A party may be precluded from amending a pleading on the basis of undue delay where the matters asserted in the amendment were known to them from the beginning of the suit. *Komie v. Buehler Corp.,* 449 F.2d 644, 648 (9th Cir. 1981) (finding that trial court did not abuse its discretion in denying leave to amend where moving party filed motion to amend thirty-one months after the answer was filed). While delay alone cannot justify denying leave to amend, it is sufficient grounds to deny leave to amend where other factors, such as dilatory motive, bad faith, prejudice, or futility, also weigh against amendment. *Hurn v. Ret. Fund Tr. of Plumbing, Heating & Piping Indus. of S. California*, 648 F.2d 1252, 1254 (9th Cir. 1981).

### B.   Parties' Positions

Plaintiffs argue that leave to amend should be freely granted under Federal Rule of Civil Procedure 15(a) and there is no prejudice to Defendant because the amendment is based on the same operative acts as originally pled. (ECF No. 35-1 at 7-8.) Further, there has been no undue delay because Plaintiffs reached out to Defendant at the end of 2019 to see if it would be willing to stipulate to amend the complaint. (*Id.* at 9-10.) Trial is not until July 13, 2022, and leave to amend was sought "far in advance of the current proposed briefing schedule regarding the Plaintiffs' Motion for class certification[.]" (*Id.* at 8, 10.) Additionally, the proposed amendment is not futile because the FLSA claim is not preempted by the LMRA. (*Id.* at 10-14.)

Defendant opposes the motion for leave to amend because Plaintiffs unreasonably delayed in seeking leave to amend and the failure to do so earlier was strategic. (ECF No. 39 at 7, 11-14.) Permitting amendment would also prejudice Defendant due to the class certification briefing deadlines as well as the litigation delays and increased expense that would result. (*Id.* at 14-17.) Finally, amendment is futile due to the distinction between paying meal and rest period premiums at the regular rate of compensation and not the regular rate of pay used to calculate overtime. (*Id.* at 8, 17-20.) Even if leave to amend is granted, the premium pay theory does not relate back to May 3, 2020, and is therefore barred by the statute of limitations. (*Id.* at 20.) The proposed amendments lack plausibility because they are based on boilerplate allegations restating the law. (*Id.* at 21-23.) Therefore, the Third Amended Complaint should not be permitted in its current form. (*Id.* at 23.)

///

On reply, Plaintiffs argue that, during the period of time between District Judge Drozd's order denying remand and the motion for leave to amend, California was placed on "safer at home" orders due to the COVID-19 pandemic and the parties were meeting and conferring regarding a discovery dispute over the Meal Period Regular Rate Sub-Class and Rest Period Regular Rate Sub-Class. (ECF No. 40 at 2-3.) Plaintiffs also contend Defendant's assertions of potential additional work and discovery are not sufficient to establish prejudice. (*Id.* at 4-5.) Plaintiffs concede that the new claims would result in additional discovery, but argue that such discovery would be limited to supplementing two written discovery responses. (*Id.*) Amendment also is not futile because the issue of whether regular rate of compensation and regular rate of pay are distinguishable will be decided by the California Supreme Court before this case goes to trial and Defendant has not argued that amendment to add the FLSA claim is futile. (*Id.* at 5-6.) Finally, Defendant's relation back argument can be managed at class certification, and plausibility is not a factor in determining leave to amend. (*Id.* at 6.)

### C.   Discussion

The Court first looks to undue delay. Here, it is clear that Plaintiffs have delayed in moving for leave to amend. Plaintiffs themselves concede that the facts underlying their FLSA claim were present in the original complaint, filed in state court on July 13, 2017, yet they decided not to assert such a claim because they believed that state law claims were sufficient. (*See* ECF Nos. 35-1 at 7-8, 40 at 2.) Indeed, Plaintiffs themselves state that "the proposed amendment is based on the same operative facts originally pled." (*Id.* at 8.) When District Judge Drozd denied Plaintiffs' motion for remand and found that the LMRA preempted some of these state law claims, Plaintiffs wanted to bring an FLSA claim to cover similar issues with a new federal claim. (ECF No. 40 at 2.) However, Plaintiffs delayed in seeking leave to amend for another nine months after issuance of the order denying remand was issued and waited until the eve of class certification to file their motion.

As for the new Meal Period Regular Rate Sub-Class and Rest Period Regular Rate Sub-Class, Plaintiffs claim they were already alleged in the Second Amended Complaint and the proposed amendment merely "clarif[ies]" the allegations of the Second Amended Complaint. (ECF No. 35-1 at 7.) However, a review of the Second Amended Complaint reveals that these

1   subclasses were not previously asserted. (*See* ECF No. 1-29.)

2          The Court does not find Plaintiffs' excuses to be persuasive or to justify their delay in

3   seeking leave to amend. Plaintiffs were aware of the facts underlying their proposed amended

4   pleading from the beginning of this litigation and have not adequately explained why they waited

5   to request leave to amend until more than three years after this case was commenced, fifteen

6   months after it was removed to federal court, nine months after District Judge Drozd issued his

7   order denying remand, and six months after Defendant refused to stipulate to amendment. This is

8   not a situation where Plaintiffs exercised diligence and uncovered new facts necessary to assert

9   their claims later in the action. Instead, Plaintiffs concede that they delayed due to strategic

10  questions regarding asserting a federal FLSA claim in light of proceeding in state court, and even

11  then cannot explain their additional nine-month delay. Plaintiffs' delay in asserting the Meal

12  Period Regular Rate Sub-Class and Rest Period Regular Rate Sub-Class appears to be related to

13  their own misunderstanding of what was alleged in the operative complaint. And although

14  Plaintiffs cite to the COVID-19 pandemic and the parties' discovery dispute as justifying their

15  delay, Plaintiffs do not explain how these events precluded them from seeking leave to amend.

16  Plaintiffs' decision not to seek leave to amend earlier in the case was deliberate and strategic, and

17  their change in strategy does not warrant granting leave to amend. *See Acri v. International Ass'n*

18  *of Machinists,* 781 F.2d 1393, 1398 (9th Cir.), *cert. denied,* 479 U.S. 816 (1986) ("[L]ate

19  amendments to assert new theories are not reviewed favorably when the facts and the theory have

20  been known to the party seeking amendment since the inception of the cause of action.");

21  *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) ("[I]n

22  evaluating undue delay, we inquire 'whether the moving party knew or should have known the

23  facts and theories raised by the amendment in the original pleading.'") (*quoting Jackson v. Bank*

24  *of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990)).

25          The Court next turns to prejudice. Plaintiffs claim that there is no prejudice to Defendant

26  because the underlying facts are the same as previously asserted. The Court disagrees. Permitting

27  amendment would "unfairly impose[] potentially high, additional litigation costs on [Defendant]

28  that could have easily been avoided" if Plaintiffs had pursued the Meal Period Regular Rate Sub-

    Class, Rest Period Regular Rate Sub-Class, and the FLSA claim in its original or first two

amended complaints. *AmerisourceBergen Corp.,* 465 F.3d at 953; *see also Morongo Bank of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1990) (affirming a district court's denial of leave to amend where amendment "would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense"); *Jackson,* 902 F.2d at 1388 ("Putting the defendants through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial.").

Amendment at this late date also interferes with the efficient and sequential process of this case. Plaintiffs' motion for class certification is also now pending, including on the subclasses first asserted in the proposed Third Amended Complaint. Plaintiffs ask this Court to issue findings and recommendations to the District Judge to grant leave to amend and then to issue contingent findings and recommendations regarding class certification if the District Judge were to adopt the findings and recommendations regarding amendment. The Court declines to do so. Under the circumstances, adding additional claims would further delay the case and disrupt the efficient progress of the case to completion. These issues of efficient case management are only heightened by this Court's judicial emergency. (*See* ECF No. 28.)

As to the FLSA claim, Defendant has indicated that it has numerous legal challenges, which may require rulings from the District Judge on the scope of the pleadings. If allowed, Plaintiffs would then have to determine which, if any, employees wish to participate. At the hearing on the motion, the Court asked Plaintiffs' counsel what the next steps for an FLSA collective action would be, and counsel for Plaintiffs explained, "I haven't done a lot of FLSA collective actions [but] I think the next step would be to then send out a notice and see who would consent to join this very small issue." (ECF No. 63 at 12.) It is possible that Defendant would challenge the sufficiency of these participants. There are thus additional significant steps Plaintiffs would need to take before proceeding to the merits of a new FLSA claim.

As to the Meal Period Regular Rate Sub-Class and Rest Period Regular Rate Sub-Class, the motion for class certification is already pending. The parties also agree that at least some discovery regarding these subclasses would be needed. While such discovery may be relatively minor, its necessity demonstrates that amendment would interfere in the orderly process of this

case, particularly as Defendant challenges whether these claims relate back. Amendment at this time would require that the District Judge adopt the findings and recommendations for leave to amend, Defendant be given the opportunity to respond to the complaint (which could include a motion to dismiss), and the parties engage in some limited discovery, before class certification could be finally resolved and the case could proceed to further litigation on the merits. It is important for the efficient administration of justice that this case move through the class certification stage and the District Judge be able to determine the certification for all potential classes and subclasses promptly.

Because of Plaintiffs' undue delay and the prejudice to Defendant as well as to the efficient management of the case and ability to reach a resolution of the matter, the Court recommends denying leave to amend.[2]

### III.   MOTION FOR CLASS CERTIFICATION

#### A.   Legal Standards

##### 1.   Class Actions Generally

The class action is a procedural mechanism whereby the "usual rule that litigation be conducted by and on behalf of the named parties only" is swept aside so that multiple parties— unwieldy in number but possessing similar or identical claims—may pursue common redress in an efficient and economical manner. *Comcast v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)); *see also Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 963–64 (9th Cir. 2013). Federal Rule of Civil Procedure 23 controls class certification and imposes a two-step process designed to ensure not only that this system of representative adjudication nets expediencies for the litigants and the judiciary, but that it does not sacrifice procedural fairness or zealous advocacy in the process of doing so.

Rule 23(a) is the first hurdle that must be overcome for a case to proceed as a class action. It consists of four prerequisites, often described as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. If—and only if—a putative class satisfies these four requirements may it then proceed to show it also satisfies one of the three subsections of Rule 23(b). The party

---

[2] Because the Court recommends denial on the basis of undue delay and prejudice, it declines to weigh in on the substantial legal questions Defendant has raised as to futility.

seeking class certification bears the burden of establishing conformity with these requirements, and must do so by producing facts "affirmatively demonstrat[ing]" that certification is warranted. *Comcast*, 569 U.S. at 33; *Dukes*, 564 U.S. at 350. A court must review the merits of a party's substantive claim to the extent that they overlap with issues touching on class certification. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing *Dukes*, 564 U.S. at 350–51 and *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992)); *see also Blair v. The CBE Grp., Inc.*, 309 F.R.D. 621, 625 (S.D. Cal. 2015). Only after it has conducted a "rigorous analysis" of these facts and determined they show "actual, [and] not presumed, conformance" with Rule 23(a) and (b), may a district court certify a class. *Ellis*, 657 F.3d at 981 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 161, (1982)); *see also Comcast*, 569 U.S. at 33–34 (extending the "rigorous analysis" requirement to Rule 23(b)); *Patel v. Nike Retail Servs., Inc.*, 2016 WL 1241777, at *3 (N.D. Cal. Mar. 29, 2016) ("This 'rigorous' analysis applies both to Rule 23(a) and Rule 23(b)."). If a court does decide to certify a class, it must define the class claims and issues and appoint class counsel. Fed. R. Civ. P. 23(c)(1), (g).

"When appropriate, a class may be divided into subclasses that are each treated as a class under this rule." Fed. R. Civ. P. 23(c)(5); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1123–24 (9th Cir. 2010) ("To the extent there may be any concern that the differing statutes . . . will render class adjudication of class members' claims impractical or undermine effective representation of the class, it may counsel the formation of subclasses."). "[E]ach subclass must independently meet the requirements of Rule 23 for the maintenance of a class action." *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981).

    2.   <u>Rule 23(a) Requirements</u>

In order for a class member to sue as a representative of all class members, the class member must establish the following prerequisites: (1) the class must be "so numerous that joinder of all members is impracticable"; (2) there must be "questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

///

1

i.     *Numerosity*

2

A proposed class must be "so numerous that joinder of all members is impracticable."

3

Fed. R. Civ. P. 23(a)(1). Numerosity has no strict limit, but certainly class membership in the

4

hundreds is sufficient to meet it. *See Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 449

5

(E.D. Cal. 2013) (numerosity met with approximately 3,500 class members); *Orvis v. Spokane*

6

*County*, 281 F.R.D. 469, 473 (E.D. Wash. 2012) (numerosity met with 260 class members);

7

*Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 594 (E.D. Cal. 2008)

8

(approximately one thousand members satisfied numerosity).

9

ii.     *Commonality*

10

Rule 23 requires there be "questions of law or fact common to the class." Fed. R. Civ. P.

11

23(a)(2). To satisfy Rule 23(a)'s commonality requirement, a class claim "must depend upon a

common contention . . . of such a nature that it is capable of class[-]wide resolution—which

12

means that determination of its truth or falsity will resolve an issue that is central to the validity of

13

each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. As the Supreme Court further

14

explained, commonality "is easy to misread, since any competently crafted class complaint

15

literally raises common questions." *Id*. at 349 (citations and quotation marks omitted). It is not

16

enough to merely recite questions to obtain class certification, and a plaintiff must demonstrate

17

that the class members "have suffered the same injury" in order to establish commonality. *Id*. at

18

349-50. Determining commonality frequently necessitates an inquiry that "overlap[s] with the

19

merits of plaintiff's underlying claim." *Id*. at 351.

20

iii.     *Typicality*

21

"[T]he claims or defenses of the representative parties [must be] typical of the claims and

22

defenses of the class." Fed. R. Civ. P. 23(a)(3). They need not be clones; rather, all that is

23

required is that the claims or defenses be "reasonably co-extensive." *Hanlon v. Chrysler Corp.*,

24

150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Dukes,* 564 U.S. 338 (noting

25

that this standard is a "permissive" one and requires only that the claims of the class

26

representatives be "reasonably co-extensive with those of absent class members; they need not be

27

substantially identical"). Typicality is satisfied if the representative's claims arise from the same

28

course of conduct as the class claims and are based on the same legal theory. *See, e.g., Kayes v.*

1  *Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs

2  have the same claims as other members of the class and are not subject to unique defenses). "The

3  test of typicality is whether other members have the same or similar injury, whether the action is

4  based on conduct which is not unique to the named plaintiffs, and whether other class members

5  have been injured by the same course of conduct." *Hanlon*, 976 F.2d at 508.

6        iv.     *Adequacy of Representation*

7       Plaintiffs seeking class certification must show that they "will fairly and adequately

8  protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether named

9  plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named

10  plaintiffs and their counsel have any conflicts of interest with other class members and (2) will

11  the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"

12  *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020)); s*ee also In re Online DVD-Rental

13  Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). "An absence of material conflicts of interest

14  between the named plaintiffs and their counsel with other class members is central to adequacy

15  and, in turn, to due process for absent members of the class." *Rodriguez v. W. Publ'g Co.*, 563

16  F.3d 948, 959 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1020). Accordingly, "[c]lass

17  certification will be inappropriate if fundamental conflicts of interest are determined to exist

18  among the proposed class members." *Allied Orthopedic v. Tyco Healthcare Grp. L.P.*, 247 F.R.D.

19  156, 177 (C.D. Cal. 2007). Generally, the adequacy inquiry seeks to ensure that the class

20  representative is "part of the class and [that he] possess[es] the same interest and injury as the

21  class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997).

22        3.    <u>Rule 23(b) Requirements</u>

23       Once the prerequisites of Rule 23(a) are met, the court must certify the class under one of

24  the Rule 23(b) categories. A class action is maintainable under Rule 23(b)(1)(A) if "prosecution

25  of separate actions ... would create a risk of inconsistent or varying adjudications with respect to

26  individual members of the class which would establish incompatible standards of conduct for the

27  party opposing the class...." Fed. R. Civ. P. 23(b)(1)(A). "The phrase 'incompatible standards of

28  conduct' refers to the situation where different results in separate actions would impair the

opposing party's ability to pursue a uniform continuing course of conduct." *Zinser v. Accufix*

*Rsch. Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d

1266 (9th Cir. 2001) (citation and quotation marks omitted). However, Rule 23(b)(1)(A)

certification requires more "than a risk that separate judgments would oblige the opposing party

to pay damages to some class members but not to others or to pay them different

amounts[.]" *Id.* Certification under Rule 23(b)(1)(A) is therefore not appropriate in an action for

damages. *Id.* (citing *Green v. Occidental Petroleum Corp.,* 541 F.2d 1335, 1340 (9th

Cir.1976); *McDonnell Douglas Corp. v. U.S. Dist. Court,* 523 F.2d 1083, 1086 (9th Cir.1975).)

As the Ninth Circuit has explained:

> Rule 23(b)(1)(A) authorizes class actions to eliminate the possibility of
> adjudications in which the defendant will be required to follow inconsistent
> courses of continuing conduct. This danger exists in those situations in which the
> defendant by reason of the legal relations involved can not as a practical matter
> pursue two different courses of conduct. The Advisory Committee's Note makes
> this clear in discussing Rule 23(b)(1)(A) by its reference to actions to declare bond
> issues invalid, to fix the rights and duties of a riparian owner, and to determine a
> landowner's rights and duties respecting a claimed nuisance.

*La Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461, 466 (9th Cir. 1973) (footnotes omitted).

Certification under Rule 23(b)(3), in turn, is permitted when "the questions of law or fact

common to class members predominate over any questions affecting only individual members,

and . . . a class action is [deemed to be] superior to other available methods for fairly and

efficiently adjudicating the controversy." *Dukes*, 564 U.S. at 362 (quoting Fed. R. Civ. P.

23(b)(3)); *see also Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("An

individual question is one where 'members of a proposed class will need to present evidence that

varies from member to member,' while a common question is one where 'the same evidence will

suffice for each member to make a prima facie showing [or] the issue is susceptible to

generalized, class-wide proof.'") (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50,

pp. 196–97 (5th ed. 2012)).

"The . . . predominance inquiry tests whether proposed classes are sufficiently cohesive to

warrant adjudication by representation," *Amchem*, 521 U.S. at 622, whereas the superiority

requirement demands courts "assess the relative advantages of alternative procedures for handling

the total controversy" in order to determine that "a class action is the 'superior' method of

resolution." Fed. R. Civ. P. 23(b)(3) advisory comm. note; *see also Pointer v. Bank of Am. Nat'l Ass'n*, 2016 WL 696582, at \*8 (E.D. Cal. Feb. 22, 2016). While the predominance requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis. *Dukes*, 564 U.S. at 359; *Amchem*, 521 U.S. at 624–25; *Hanlon*, 150 F.3d at 1022. Ultimately, "[t]he predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc.*, 136 S. Ct. at 1045 (quoting Newberg, § 4:49, at 195–96).

Rule 23(b)(3) provides that, aside from predominance, a court must find that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule lists four metrics pertinent to superiority, including class members' interests in individually controlling litigation, whether any litigation has already been filed by putative class members, the desirability of concentrating the litigation in a class action, and the "likely difficulties in managing a class action." *Id.* The Ninth Circuit has recognized a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns," but rather should look to "manageability as one component of the superiority inquiry." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015)).

**B.**   **Discussion**[3]

1.   <u>Rule 23(a): Adequacy of Class Representatives and Class Counsel</u>[4]

Plaintiffs seek to appoint Robert Van Bebber, Martha Ochoa, and Rachel Clover as class representatives and to appoint Joseph Antonelli and Janelle Carney of Law Office of Joseph Antonelli and Robert L. Starr, Manny Starr, and Adam M. Rose of Frontier Law Center as class

---

[3] The parties each filed objections to the declarations and evidence produced in support of Plaintiffs' motion and Defendant's opposition. (ECF Nos. 53-4, 53-5, 57-5, 57-6, 57-5). "Since a motion to certify a class is a preliminary procedure, courts do not require strict adherence to the Federal Rules of Civil Procedure or the Federal Rules of Evidence." *Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 505 (E.D. Cal. 2014) (citations omitted). "The court need not address the ultimate admissibility of the parties' proffered exhibits, documents and testimony at this stage, and may consider them where necessary for resolution" of the motion. *Id.* (citations and quotation marks omitted.) Accordingly, the Court recommends overruling the parties' evidentiary objections for purposes only of ruling on these two motions and reviews all the evidence presented for purposes of the motion for class certification.

[4] As noted above, each of the Rule 23 requirements must be determined for each of the classes and subclasses to be certified. Accordingly, the Court has considered the applicability of these requirements separately for each class and subclass but will discuss them collectively where the same reasoning applies to all classes and subclasses.

1  counsel. (ECF No. 45 at 5.) Plaintiffs argue that there is no evidence of antagonism between the

2  proposed class representatives or class counsel and the putative classes. (ECF No. 45-1 at 29.)

3  Defendant does not object to the adequacy of the proposed class representatives. (*See* ECF Nos.

4  53, 63.)

5          The proposed class representatives each filed declarations under penalty of perjury stating

6  that they do not have any interests antagonistic to the class, they are prepared to be class

7  representatives through trial, they are adequate representatives, and their interests are the same as

8  class members because Defendant utilized one timekeeping system for all employees. (ECF No.

9  45-2 at 268, 274, 279.) These representations are sufficient to meet the general criteria for serving

10 as a class representative.

11         Plaintiffs also provide declarations regarding Ms. Carney, Mr. Antonelli, Mr. Rose, and

12 Mr. Robert Starr's qualifications. (ECF No. 45-2 at 5-14, 30-31.) Plaintiffs did not submit any

13 declarations regarding Manny Starr's qualifications.[5] Absent any demonstrated conflicts of

14 interest, and given the qualifications of class counsel, the Court is satisfied that Ms. Carney, Mr.

15 Antonelli, Mr. Rose, and Mr. Robert Starr will vigorously and adequately pursue representation

16 of the class and finds that they are appropriate class counsel. However, in light of the Court's

17 obligation to conduct a rigorous analysis and determine actual, and not presumed, conformance

   with Rule 23(a), the Court will not recommend that Manny Starr be appointed as class counsel.

18         2.      Rule 23(a): Typicality

19         Plaintiffs argue that the proposed class representatives' claims are typical of the classes

20 they seek to represent because they possess the same interests, suffered the same injury, and

21 allege identical violations. (ECF No. 45-1 at 28.) Defendant, in turn, argues that the typicality

22 requirement is not met because the proposed class representatives worked as a Security Guard,

23 Ward Clerk in the Emergency Room, and RN in the Telemetry Department and "did not work in

24 any of the other 76 departments or 251 other positions that are encompassed by the proposed

25 class." (ECF No. 53 at 8.)

26         ⁵ Plaintiff initially did not submit information regarding Robert Starr or Manny Starr's qualifications in
   support of the motion for class certification. (*See* ECF No. 45.) The Court allowed Plaintiffs to submit supplemental

27 declarations if Plaintiffs wished for Robert Starr and Manny Starr to be appointed class counsel. (ECF No. 64.) On
   March 19, 2021, Plaintiffs submitted a declaration regarding Robert Starr's qualifications but did not submit any

28 further information regarding Manny Starr's qualifications. (*See* ECF No. 65.)

Plaintiffs have provided declarations indicating that they would fit within the applicable definitions for all classes and subclasses and are bringing the same substantive legal claims as the proposed class. Specifically, according to their declarations, Plaintiff Van Bebber's claims are typical of the Regular Rate/Overtime Class and Rounding Class; Plaintiff Ochoa's claims are typical of the Rounding Class, the On Call/Standby Class, the Second Meal Break Class, the Meal Period Waiver Sub-Class, the Pay Stub Class, and the Waiting Time Penalty Class; and Plaintiff Clover's claims are typical of the Rounding Clinical Sub-Class, the On Call/Standby Class, the Meal Period Waiver Sub-Class, the Meal Break Sub-Class, the Pay Stub Class, the Rest Break Class, and the Waiting Time Penalty Class. (*See* ECF Nos. 45-2 at 263-280, 57 at 20-21.)

While typicality requires that the class representative be part of the class and have the same interests and injuries as other class members, those interests and injuries are not required to be identical. *Falcon,* 457 U.S. at 156; *Hanlon,* 150 F.3d at 1020. Therefore, certification may still be appropriate where, as here, employees in "different job categories" challenge "practices . . . in the different categories that are themselves similar." *Dukes v. Wal-Mart, Inc.,* 509 F.3d 1168, 1185 (9th Cir. 2007), *rev'd on other grounds,* 131 S.Ct. at 2556-57 (2011). Although Plaintiffs did not work in each of the various departments and positions that are encompassed by the proposed classes and subclasses, Defendant does not explain how, if at all, this makes Plaintiffs' claims atypical. Plaintiffs' declarations demonstrate that their claims arise from the same course of conduct as the proposed class claims and are based on the same legal theories, except as addressed below regarding the commonality of issues among the class. Their claims are "reasonably co-extensive with those of absent class members" and are therefore typical. *Hanlon,* 150 F.3d at 1020. The Court therefore finds that the typicality requirement has been met to the extent the Court finds that the Plaintiffs have established commonality, discussed further below.

3.      Rule 23(a): Numerosity

Plaintiffs represent that all classes and subclasses are composed of 2,215 employees. (ECF No. 45-1 at 12.) Defendant does not dispute that the classes and subclasses are sufficiently numerous. (*See* ECF No. 53.)

Plaintiffs' counsel also submitted a declaration representing that the Regular Rate/Overtime Class is composed of approximately 1,383 employees, the Rounding Class is

18

composed of approximately 1,428 employees, the Rounding Clinical Sub-Class is composed of approximately 636 employees, the On Call/Standby Class is composed of approximately 756 employees, the Second Meal Break Class is composed of approximately 1,623 employees, the Meal Break Sub-Class is composed of approximately 448 employees, the Pay Stub Class exceeds 1845 employees, and the Waiting Time Penalty Class is composed of approximately 1,025 employees. (ECF No. 66.) *See Orvis,* 281 F.R.D. at 473 (reasoning that numerosity was met with 260 class members); *Collins v. Cargill Meat Sols. Corp.,* 274 F.R.D. 294, 300 (E.D. Cal. 2011) ("Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members.").

As to the Meal Period Waiver Sub-Class and the Rest Break Class, Plaintiffs do not provide an exact estimate of the number of putative class members. Plaintiffs argue that the Meal Period Waiver Sub-Class is sufficiently numerous because all new hire packets contain a meal waiver, and two managers testified that they did not know of any employees in their departments that did not sign a meal waiver. (ECF No. 66 at 6.) Additionally, the Rest Break Class includes "the vast majority of the hospital employees and is capable for further determination once the identifying information is produced, assuming a class is certified." (*Id.* at 8.) *See West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 303 (N.D. Cal. 2017) ("Plaintiffs need not state an exact number to meet the threshold requirements of Rule 23. Rather, the rule requires examination of the specific facts of each case and imposes no absolute limitations.") (citation and quotation marks omitted); *Orantes-Hernandez v. Smith,* 541 F.Supp.351, 370 (C.D. Cal. 1982) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.").

In light of the estimates provided by Plaintiffs, the Court finds that the numerosity requirement has been met.

    4.    <u>Rule 23(a): Commonality and Rule 23(b)(3): Predominance</u>

The Court next considers whether Plaintiffs have established commonality under Rule 23(a) for each class and subclass.[6] Because the considerations under the Rule 23(a) commonality

---

[6] Where a class and subclass are closely related and rely on substantially the same legal theories, the Court discusses them together.

19

1  and Rule 23(b)(3) predominance factors are similar, the Court will also address any arguments

2  concerning predominance.

3        i.     *Class 1: Regular Rate/Overtime Class*

4        Plaintiffs seek to certify the Regular Rate/Overtime Class for Defendant's failure to

5  properly calculate the regular rate of pay for purposes of overtime. (ECF Nos. 45 at 2, 45-1 at 18,

6  1-29 at 12-15.) Plaintiffs' claim is based on the contention that, among the many types of

7  payments excluded from calculating the regular rate of pay for overtime purposes, three

8  payments—the "imputed bonus," the "non FLSA bonus," and the "Broad Based" bonus were

9  wrongfully excluded because they are supposedly "non-discretionary." (ECF No. 45-1 at 18.)

10        a.     Applicable Law Regarding Regular Rate of Pay

11        "In California, 'wage and hour claims are today governed by two complementary and

12  occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the

13  Legislature, and a series of 18 wage orders, adopted by the IWC.'" *Donohue v. AMN Servs., LLC*,

14  --Cal.--, 2021 WL 728871, at *4 (Cal. Feb. 25, 2021) (quoting *Brinker Restaurant Corp. v.*

15  *Superior Court,* 53 Cal.4th 1004, 1026 (2012)). California Labor Code § 510 and IWC Order No.

16  5-2001 govern the payment of overtime to employees in the health care industry. *See* Cal. Lab.

17  Code § 510; 8 Cal. Code Regs. § 11050 (codifying IWC Order No. 5-2001); *see also* Cal. Lab.

18  Code § 1194 (authorizing an employee receiving less than the legal overtime compensation to

19  recover the unpaid balance, interest, attorney's fees, and costs of suit in a civil action). The wage

20  order provides:

21      (A) Daily Overtime-General Provisions

22          (1) The following overtime provisions are applicable to employees 18 years of
        age or over and to employees 16 or 17 years of age who are not required by
        law to attend school and are not otherwise prohibited by law from engaging in
        the subject work. Such employees shall not be employed more than eight (8)
        hours in any workday or more than 40 hours in any workweek unless the
        employee receives one and one-half (1 1/2) times such employee's regular rate
        of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of
        labor constitutes a day's work. Employment beyond eight (8) hours in any
        workday or more than six (6) days in any workweek is permissible provided
        the employee is compensated for such overtime at not less than:

28  ///

1

2

3

    (a) One and one-half (1 1/2) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and

4

5

6

    (b) Double the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

7

8

9

    (c) The overtime rate of compensation required to be paid to a nonexempt full-time salaried employee shall be computed by using the employee's regular hourly salary as one-fortieth (1/40) of the employee's weekly salary.

8 Cal. Code Regs. § 11050

10

11

12

13

14

15

16

    California law does not specifically address the inclusion or exclusion of bonus payments in the "regular rate of pay," but California case law often looks to FLSA standards to interpret the "regular rate of pay" under California law. *Alonzo v. Maximus, Inc.,* 832 F.Supp.2d1122, 1129 (C.D. Cal. 2011) (citations omitted). The FLSA defines "regular rate" to include "all remuneration for employment paid to, or on behalf of, the employee" subject only to certain specific enumerated statutory exceptions. 29 U.S.C. § 207(e). As relevant here, discretionary bonuses are excluded from the regular rate of pay under the FLSA definition. *Id.* at 208(e)(3).

17

    b.    Analysis

18

19

20

21

22

23

24

25

26

    Plaintiffs allege that this class should be certified because any payments for the "imputed bonus," the "non FLSA bonus," and the "Broad Based bonus" were non-discretionary and improperly excluded from the overtime calculation for all class members. (ECF No. 45-1 at 18.) In its opposition, Defendant argues that Plaintiffs' unfounded assumption that each of these bonuses were non-discretionary is wrong. (ECF No. 53 at 21.) In fact, the pay codes for the "imputed bonus," the "non FLSA bonus," and the "Broad Based bonus" were used for discretionary items. (*Id.* at 22. ) Additionally, there are no methods of common proof for this class because each instance where the relevant pay codes were used must be individually examined to ascertain why the payment was made on each occasion for each employee to determine if the circumstances were discretionary or non-discretionary. (*Id.*)

27

    ///

28

This issue was discussed extensively at the hearing on this motion. (*See* ECF No. 63.) Defendant claimed that its policies properly included non-discretionary bonuses, and only excluded discretionary bonuses, in calculating the regular rate of pay for overtime purposes. (*Id.* at 35, 37-42.) Plaintiffs' counsel explained the sole factual basis for this claim was a pay code and description document, which noted which types of pay were included in the overtime calculations, as well as a memorandum of understanding with union employees that included a description of the "Broad Based bonus." (*Id.* at 42-43.) The pay code and description document included the following rows:

| Pay Code and Description | Regular Rate Include Hours? | Regular Rate Include Dollars? |
|---|---|---|
| 704 - BONUS NON FLSA | N | N |
| 705 - IMPUTED BONUS | N | N |
| 728 – BROAD BASED BONUS | N | N |

(ECF No. 45-3 at 447.)

Notably, nothing in the chart indicates whether the bonuses are discretionary or not. Further, Plaintiffs' counsel conceded at the hearing that Plaintiffs "don't have any evidence to explain what those bonuses are for" and the chart only shows that those bonuses were not included in the regular rate. (ECF No. 63 at 45-46.) Further, Plaintiffs do not point to any evidence that the named plaintiffs received these bonuses in a discretionary circumstance.

Defendant's counsel argued at the hearing that the bonuses at issue are discretionary, pointing to the memorandum of understanding with union employees which described the "Broad Based bonus" as discretionary. (ECF No. 63 at 46; *see also* ECF No. 45-3 at 449 ("The Employer and the Union agree that the Employer will pay a one-time discretionary bonus to eligible employees represented by Union.").) Plaintiffs' counsel, in turn, argued that the memorandum of understanding between Defendant and union members described specific criteria for employees to satisfy in order to get the "Broad Based bonus" and that made it non-discretionary. (ECF No. 63 at 44-45.)

While this discussion largely concerns the merits of Plaintiffs' claims, it also sheds light on Plaintiffs' request to certify this class. Plaintiffs cannot point to any policy to exclude non-

discretionary bonuses from the calculation of the regular rate for purposes of overtime. Not to mention that Plaintiffs fail to show that such exclusion affected the named plaintiffs or a sufficient number of similarly-situated individuals. Plaintiffs have had an opportunity to take discovery in this case, yet still cannot point to any evidence of a class-wide issue related to exclusion of non-discretionary bonuses. Without more evidence, the Court cannot conclude that there is a common question affecting the entire putative class. *See Culley v. Lincare Inc.,* 2017 WL 3284800, at *6 (E.D. Cal. Aug. 2, 2017) (granting a motion to decertify a regular rate overtime class where the bonus plan was ambiguous as to whether the bonuses were non-discretionary).

The memorandum of understanding also only applies to employees who are subject to a collective bargaining agreement and are not part of this class. (ECF No. 45-3 at 449-452.) District Judge Drozd previously ruled that those employees' overtime claims are preempted by the LMRA. (*See* ECF No. 23.) While Plaintiffs argue that those employees' overtime claims are not preempted because there is no collective bargaining exemption from the FLSA, Plaintiffs' operative complaint does not allege a violation of the FLSA and the Court has recommended denying Plaintiffs' request for leave to amend to assert such a claim. (*See* ECF Nos. 1-29, 45-1 at 20.) Further, Plaintiffs are requesting certification of a class action under Rule 23, not a collective action under the FLSA. The procedures and requirements for collective actions are independent of, and unrelated to, those for class certification. *Lillehagan v. Alorica, Inc.,* 2014 WL 2009031, at *6 (C.D. Cal. May 15, 2014); *see also Campbell v. City of Los Angeles,* 903 F.3d 1090, 1101 (9th Cir. 2018) ("Collective actions and class actions are creatures of distinct texts . . . that impose distinct requirements.").

In their briefing, Plaintiffs argue that the Court must accept Plaintiff's "prism" of the case and not the merits. (ECF Nos. 45-1 at 9, 57 at 7-8.) This argument is based upon the standards that state courts, and not federal courts, consider in granting class certification. (*See id.*) As the Ninth Circuit has explained, "it is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis,* 657 F.3d at 981 (citations omitted, emphasis in original).

23

Plaintiffs also leave open the possibility that there may be other unidentified forms of renumeration that Defendant failed to include in the regular rate of pay. (*See* ECF No. 45-1 at 19-20.) This is too speculative for class certification. As the parties seeking class certification, Plaintiffs bear the burden of showing that the requirements of Rule 23 are met and must produce facts "affirmatively demonstrat[ing]" that certification is warranted. *Dukes*, 564 U.S. at 350; *see also Haitayan v. 7-Eleven, Inc.*, 2021 WL 757024, at *5 (C.D. Cal. Feb. 8, 2021) (reasoning that "vague and conclusory arguments are insufficient to satisfy a plaintiff's burden" at class certification).

Plaintiffs thus have not satisfied the Rule 23(a) commonality requirement for the Regular Rate/Overtime class. *Dukes,* 564 U.S. at 359 ("Because respondents provide no convincing proof of a companywide . . . policy, we have concluded that they have not established the existence of any common question."); *see also Chavez v. AmeriGas Propane, Inc.*, 2015 WL 12859721, at *28 (C.D. Cal. Feb. 11, 2015) (finding that a plaintiff had failed to establish commonality where he "proffered no evidence that, contrary to its stated policy of including non-discretionary bonuses in the regular rate of pay, [the defendant] had a practice of omitting such bonuses from the calculation"). The Court therefore recommends that the motion for class certification be denied as to the Regular Rate/Overtime Class.

     5.     *Sub-Class 4: Meal Period Regular Rate Sub-Class and Sub-Class 5: Rest Period Regular Rate Sub-Class*

Plaintiffs seek to certify a proposed Meal Period Regular Rate Sub-Class and a proposed Rest Period Regular Rate Sub-Class. Again, the operative complaint did not identify these subclasses in its class definition allegations. (*See* ECF No. 1-29.)

For the reasons explained above, the Court has recommended denying Plaintiffs' motion for leave to amend. The Court therefore recommends that certification of these subclasses be denied because they are not in the operative complaint. *See Berlowitz v. Nob Hill Masonic Mgmt.*, No. 96-cv-01241-MHP, 1996 WL 724776, at *2 (N.D. Cal. Dec. 6, 1996) ("The court is bound by the class definition provided in the complaint [and] will not consider certification of the class beyond the definition provided in the complaint unless plaintiffs choose to amend it."); *see also Costelo v. Chertoff*, 258 F.R.D. 600-05 (C.D. Cal. 2009) ("The Court is bound to class

24

definitions provided in the complaint and, absent an amended complaint, will not consider

certification beyond it.").

The Meal Period Regular Rate Sub-Class and the Rest Period Regular Rate Sub-Class are

also based on the theory that Defendant improperly excluded non-discretionary bonuses from

class members' regular rate of pay. (*See* ECF Nos. 45-1 at 21, 57 12-13.) These subclasses pose

the same issues as the Regular Rate/Overtime class, except that they also include union

employees, and thus would suffer from the same defects.

ii.       *Class 2: Rounding Class and Sub-Class 1: Rounding Clinical Sub-Class*

Plaintiffs seek to certify the Rounding Class and Rounding Clinical Sub-Class for

Defendant's failure to pay minimum wages and/or overtime wages based on Defendant's

unlawful rounding policy. (ECF Nos. 45 at 3, 45-1 at 14-17.)

a.       Applicable Law Regarding Rounding

Federal law permits employers to use rounding policies under certain circumstances:

> It has been found that in some industries, particularly where time clocks are used,
> there has been the practice for many years of recording the employees' starting
> time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or
> quarter of an hour. Presumably, this arrangement averages out so that the
> employees are fully compensated for all the time they actually work. For
> enforcement purposes this practice of computing working time will be accepted,
> provided that it is used in such a manner that it will not result, over a period of
> time, in failure to compensate the employees properly for all the time they have
> actually worked.

29 C.F.R. § 785.48(b). "[A]n employer's rounding practices comply with § 785.48(b) if the

employer applies a consistent rounding policy that, on average, favors neither overpayment nor

underpayment." *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1126 (C.D. Cal. 2011) (citations

omitted). California does not have a statute or regulation expressly addressing the permissibility

of using a rounding policy, but state courts have followed the federal standard. *See See's Candy

Shops, Inc. v. Superior Court,* 210 Cal.App.4th 889, 903 (2012) ("The policies underlying the

federal regulation—recognizing that time rounding is a practical method for calculating work

time and can be a neutral calculation tool for providing full payment to employees—apply

equally to employee-protective policies embodied in California Labor law."); *but see Donohue,* --

Cal. --, 2021 WL 728871, at *4-9 (holding that a rounding practice is not consistent with the Labor Code provision providing for premium pay for shortened or missed meal periods).

b.    Analysis

Plaintiffs concede that Defendant's rounding policy is uniform for all employees and rounds both up and down. (ECF Nos. 45-1 at 15.) However, Plaintiffs' theory is that, when coupled with Defendant's time and attendance policies, the rounding mechanism is unlawful and underpays employees. (*Id*. at 15-17.) Specifically, Defendant does not offer a "grace" period, requires its employees to start each work period on time, and has a strict no overtime policy, resulting in "Defendant reap[ing] the benefit of up to fourteen (14) minutes of unpaid time per shift." (*Id*. at 15.)

Plaintiffs have presented evidence that Defendant has a written policy to employ a seven-minute rounding rule, which rounds all punches to the nearest quarter hour. (ECF No. 45-3 at 8.) Plaintiffs have also presented evidence that Defendant has written policies requiring non-exempt employees to record their start time for their shifts no earlier than seven minutes before the scheduled shift start and to record their stop time no later than seven minutes after the scheduled shift stop. (*Id*. at 10, 18.) Additionally, overtime may only be worked with prior approval of an employee's supervisor. (*Id*. at 22.) Plaintiffs also provide a declaration from Brian Kriegler, Ph.D., opining that his review of sampled timekeeping records indicated that 56.2% of shifts, 68.5% of pay periods, and 78.9% of employees were potentially underpaid due to Defendant's rounding policy.[7] (ECF No. 45-2 at 53-54.)

Defendant does not dispute the existence of the rounding policy and instead asserts that the policy is lawful and neutral on its face. (ECF No. 53 at 8-10, 17-19.) Defendant points to a declaration from its expert opining that the difference between rounded and actual hours was only .26%, which was "statistically meaningless" (*Id*. at 9, 18.)

However, this argument does not defeat a showing of commonality. The question is not whether Plaintiffs will ultimately prevail; the question is whether Plaintiffs have established a

---

[7] These figures were "weighted" to account for differences in pay between straight time, overtime, and double time. (*See* ECF No. 45-2 at 76-78.) If overtime and double time are not weighted, Dr. Kriegler's analysis indicates that 56.2% of shifts, 66.7% of pay periods, and 77.4% of employees are potentially underpaid due to the rounding policy. (*Id*. at 54.)

26

colorable factual basis that Defendant imposed unlawful policies or practices applicable to all class members. Additionally, this defense tends to support, rather than undermine, class certification because the issue of whether the violation was *de minimis* will be suitable for resolution across the entire class. *See Aldapa*, 323 F.R.D. at 340 ("[D]istrict courts have held that this [*de minimis*] defense does not preclude class certification[.]"). To the extent Defendant disputes the accuracy or completeness of Plaintiffs' interpretation of the applicable records, Defendant may provide its own analysis of the data. However, that analysis would remain common to all employees.

Defendant also argues that Plaintiffs' theory fails because they did not "submit actual evidence that putative class members consistently modified their timeclock habits due to a fear of discipline under the tardiness and overtime policies." (ECF No. 53 at 18.) The Court does not agree that Plaintiffs are required to submit such evidence to establish commonality. Plaintiffs have presented sufficient evidence that Defendant had common written policies that resulted in underpayment. "Generally, 'challeng[ing] a policy common to the class as a whole creates a common question whose answer is apt to drive the resolution of the litigation.'" *Mejia v. Walgreen Co.*, 2020 WL 6887749, at *4 (E.D. Cal. Nov. 24, 2020) (quoting *Ontiveros v. Zamora*, 2014 WL 3057506, at *5 (E.D. Cal. July 7, 2014)). This raises a common issue of whether the rounding policy is unlawful as applied. Additionally, there are common methods of proof— Defendant's timekeeping records—that will facilitate class-wide resolution. *See Selk v. Pioneers Mem'l Healthcare Dist.*, 2014 WL 12729167, at *4 (S.D. Cal. Apr. 22, 2014) (finding commonality met where facially neutral rounding policy was alleged to be unlawful as applied with defendant's time and attendance policies).

Indeed, Defendant has already filed a motion for partial summary judgment on the rounding issue. (*See* ECF No. 43.) Without commenting on the merits of that pending motion, Defendant's motion and Plaintiff's opposition reveal that this issue can be decided on a class-wide basis.

Finally, Defendant argues that individualized issues predominate over common ones for the Rounding Class and Rounding Clinical Sub-Class because application of Defendant's tardiness policy "varies significantly based on the unit, managerial discretion, and an employee's

1   personal circumstances[.]" (ECF No. 53 at 10.) Additionally, Plaintiffs have not submitted any

2   evidence that putative class members in fact modified their habits because they were afraid of

3   being disciplined under the tardiness and overtime policies. (*Id.* at 18-19.) Plaintiffs, in turn,

4   contend that whether or not Defendant enforces its policies is not relevant because "[e]mployees

5   are put on notice of the potential infractions and respond accordingly." (ECF No. 47 at 11.)

6           Common issues predominate over individual ones within this class. As described above,

7   Defendant maintained universal rounding, tardiness, and overtime policies applicable to all

8   putative class members. Plaintiffs' claims will succeed or fail based on the ultimate determination

9   of whether those policies are lawful both facially and as applied using Defendant's timekeeping

10  records. *Selk,* 2014 WL 12729167, at *6 ("A rounding practice is lawful only if it is neutral both

11  facially and as applied.") (citation omitted.)

12          Defendant submits some evidence that some supervisors did not discipline employees for

13  tardiness or failure to obtain approval for overtime. (*See* ECF No. 53-3 at 5-7, 53-2.) However,

14  the existence of some individualized questions does not necessarily preclude class treatment so

    long as those issues can be effectively managed and do not predominate over common ones.

15  *Marlo v. United Parcel Serv., Inc.,* 251 F.R.D. 476, 484 (C.D. Cal. 2008), *aff'd,* 639 F.3d 942 (9th

16  Cir. 2011) ("The commonality and predominance requirements are designed to promote the goals

17  of efficiency and judicial economy by focusing on whether a class action makes sense based upon

18  the balance of common and individual issues. The presence of some individualized issues does

19  not preclude class treatment.").

20          The Court finds that Plaintiffs have met the commonality and predominance requirements

21  for the Rounding Class and Rounding Clinical Sub-Class.

22              i.      *Class 3: On Call/Standby Class*

23          Plaintiffs seek to certify the On Call/Standby Class for Defendant's failure to pay

24  minimum wages due to a policy and procedure of requiring employees in clinical departments to

25  be placed on call/standby. (ECF No. 45-1 at 22-23.)

26              a.      Applicable Law Regarding On-Call or Standby Time

27          "On-call waiting time may be compensable if it is spent primarily for the benefit of the

28  employer and its business." *Gomez v. Lincare, Inc.,* 173 Cal.App.4th 508, 523 (2009) (citing

                                               28

1    *Armour & Co. v. Wantock* (1944) 323 U.S. 126, 132 (1944). "California courts considering

2    whether on-call time constitutes hours worked have primarily focused on the extent of the

3    employer's control." *Mendiola v. CPS Sec. Sols., Inc.,* 60 Cal. 4th 833, 840 (2015). Factors that

4    courts consider when determining whether standby time is compensable include:

5        "(1) whether there was an on-premises living requirement; (2) whether there were
         excessive geographical restrictions on employee's movements; (3) whether the
6        frequency of calls was unduly restrictive; (4) whether a fixed time limit for
         response was unduly restrictive; (5) whether the on-call employee could easily
7        trade on-call responsibilities; (6) whether use of a pager could ease restrictions;
         and (7) whether the employee had actually engaged in personal activities during
8        call-in time."

9    *Owens v. Local No. 169*, 971 F.2d 347, 351 (9th Cir. 1992)).

10            b.      Analysis

11           Plaintiffs contend that Defendant's on call/standby policy results in a failure to pay

12   minimum wages because Defendant pays this time at a rate of $7.00 per hour for nurses, $5.50

13   per hour for Technicians in Surgery and Endoscopy, and $4.50 per hour for all other licensed and

14   non-licensed time, but the minimum wage during the relevant time period was $8.00-$11.00.

15   (ECF No. 45-1 at 22.) Defendant argues that Plaintiffs have not established commonality because

16   the applicable multi-factor test requires individualized inquiries to adjudicate, and employees

17   testified that the thirty-minute requirement was not strictly enforced. (ECF No. 53 at 24-25.)

18           Plaintiffs submit evidence of collective bargaining agreements between Defendant and the

19   California Nurses Association covering the period from June 1, 2013 through June 30, 2021, as

20   well as an agreement between Defendant and the American federation of State, County, and

21   Municipal Employees Local 2703 for the periods from July 1, 2014 through June 30, 2018, and

22   from September 24, 2018, through June 30, 2022. (ECF No. 45-3 at 454-481.) These documents

23   state that the employees subject to the respective agreements are required to provide Defendant

24   with a telephone number where he or she can be reached and, if called to work, respond and

25   report to the hospital within thirty minutes. (*Id.* at 457, 463, 472, 479.) These documents also

     confirm the rates of pay described by Plaintiffs. (*Id.*)

26           As to Defendant's argument that there may be some individualized issues regarding some

27   of the applicable factors, those individualized issues are not necessarily central to resolution of

28

the On Call/Standby Class claims. The focus of Plaintiffs' theory underlying the On Call/Standby Class is on Defendant's policy, which applied uniformly to all members of the class. *See In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009)("[C]ourts have long found that comprehensive uniform policies detailing the job duties and responsibilities of employees carry great weight for certification purposes."). Whether an employee engaged in personal activities may include some individual issues, but they do not predominate over all common issues. *See Henry v. Med-Staff, Inc.,* 2007 WL 19998653, at *11 (C.D. Cal. 2007) (analyzing the personal activities factor as to all employees covering on-call assignments). For example, Defendant itself argues that the thirty-minute response time was not unduly restrictive as a matter of law, and this argument applies to the entire class. (*See* ECF No. 53 at 24.) Moreover, Defendant's policy does not allow for individualized determination of rates based on the employee's personal activities. Additionally, Defendant imposes a uniform requirement that employees provide a telephone number where he or she can be reached and, if called to work, respond and report within thirty minutes. Plaintiffs are entitled to challenge such a blanket policy. This issue of whether this policy is lawful is common to the entire class and, on balance, individual issues do not predominate over common ones.

The Court therefore finds that commonality and predominance are satisfied for the On Call/Standby Class.

      ii.     *Class 4: Second Meal Break Class and Sub-Class 3: Meal Break Sub-Class*

Plaintiffs seek to certify the Second Meal Break Class and Meal Break Sub-Class for Defendant's failure to provide a second meal break to employees who worked shifts of more than ten hours. (ECF Nos. 45 at 3, 45-1 at 23-24.)

      a.     Applicable Law Regarding Meal Breaks

Under California law, an employer may not "require any employee to work during any meal . . . period mandated by an applicable order of the Industrial Welfare Commission." Cal. Lab. Code § 226.7(a). IWC Order No. 5-2001, in turn, provides:

11. Meal Periods

> (A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> meal period may be waived by mutual consent of the employer and the employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.
>
> (B) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

8 Cal. Code Regs. § 11050; *see also* Cal. Lab. Code § 512(a) (accord). To satisfy its duty to "provide" a meal break, an employer must "relieve the employee of all duty for the designated period, but need not ensure that the employee does no work." *Brinker Rest. Corp. v. Superior Court,* 53 Cal.4th 1004, 1034 (2012); *see also Kenny v. Supercuts, Inc.,* 252 F.R.D. 641, 645 (N.D. Cal. 2008) (reasoning that California law only requires the employer to provide a meal period and does not impose liability "for a failure to ensure that an employee actually availed herself of the meal period").

     b.     Analysis

Plaintiffs seek certification of "Defendant's admitted policy of never scheduling or providing a second meal period to its employees who work 12 hour shifts." (ECF No. 45-1 at 24.) Plaintiffs rely on the depositions of Rachel Abril and Beatriz Ramirez as establishing this policy. (*Id.*) Ms. Abril testified that, during the time she oversaw telemetry, all employees that she knew of had a meal waiver, she was not aware of any employees revoking their meal waiver, and none of the employees ever asked for a second meal on a shift. (ECF No. 45-5 at 25.) Similarly, Ms. Ramirez testified that, when she was "the director," she was not aware of any 12-hour shift employee that did not have a meal waiver, she did not know of any employee that revoked a meal waiver, and she cannot remember any employee requesting a second meal on a shift. (*Id.* at 31.) Plaintiffs also cite to the declaration of Dr. Kriegler, which stated that his review of sampled timekeeping and payroll records produced by Defendant revealed 48,029 second meal breaks were completely missed or late and Defendant made 2,755 Meal Premium Payments. (ECF No. 45-2 at 56.)

31

Defendant argues that Plaintiffs have not offered evidence of a uniform practice to deny suitable meal breaks. (ECF No. 53 at 25-26.) Defendant offers declarations from several employees stating that they were given an opportunity to take a second meal break, voluntarily waived the meal period, never revoked the waiver, and preferred to waive one of their two meal periods so that they could complete their shift sooner. (ECF Nos. 53 at 26, 53-2.) Some employees also provided declarations stating that they took second meal periods when they wanted to do so. (*Id.*) Because there was no universal practice to deny second meal breaks, Defendants contend that Plaintiffs would need to prove each particular occasion where an employee did not have an opportunity to take a timely second break. (ECF No. 53 at 26-27.)

Plaintiffs have not shown that Defendant has a common policy or practice to deny second meal breaks. Ms. Abril and Ms. Ramirez testified that, to their knowledge, the employees that they supervised had signed a meal break waiver and did not request a second meal break on shift. IWC Order No. 5-2001 does not require an employer to provide a meal break if it is waived by the mutual consent of the employer and employee. *See* 8 Cal. Code Regs. § 11050 ("Notwithstanding any other provision of this order, employees in the health care industry who work shifts in excess of eight (8) total hours in a workday may voluntarily waive their right to one of their two meal periods."). Here, Plaintiffs' evidence is equally consistent with a common or even universal desire to waive a second meal break.[8] Plaintiffs have not provided any evidence that Defendant had a policy of failing to provide second meal breaks to employees who wanted

---

[8] On reply, Plaintiffs argue that the meal period waivers were not voluntarily signed. (ECF No. 57 at 14.) While this argument was not raised in Plaintiffs' moving papers, to the extent it can be considered responsive to issues raised in Defendant's opposition, Plaintiffs have not submitted evidence supporting this theory. *See Provenz v. Miller,* 102 F.3d 1478, 1483 (9th Cir. 1996) (reasoning that a district court should not consider new evidence presented in a reply without giving the non-movant an opportunity to respond); *see also Edwards v. Toys "R" Us,* 527 F.Supp.2d 1197, 1205 n. 31 (C.D. Cal. 2007) ("Evidence is not 'new,' however, if it is submitted in direct response to proof adduced in opposition to a motion."). Plaintiffs do not point to any declarations or deposition testimony from employees stating that signing a meal waiver was in any way involuntary. In contrast, Defendant provides declarations from multiple employees stating that no one told them to sign a meal waiver in order to be hired and they did not feel pressured to sign it. (*See* ECF No. 53-2.) Plaintiffs instead argue that the fact that "all employees have signed the waiver" raises a presumption that the waiver is not voluntary. (ECF No. 57 at 14.) Plaintiffs rely on *Escano v. Kindred Healthcare Operating Co.* 2013 WL 816146 (C.D. Cal. Mar. 5, 2013) for the proposition that "the question of the voluntariness of the waiver is a prime issue for certification." (ECF No. 47 at 14.) However, in *Escano,* the plaintiff submitted evidence in support of their class certification motion indicating that employees were required to sign the waiver as a condition of employment. *Escano,* 2013 WL 816146, at *9-10. Plaintiffs have not done so here. *See id.* at *8 ("Plaintiffs have the ultimate burden to prove that Defendants have a policy of inadequate meal provision. Plaintiffs must provide common evidence of inadequate meal periods to . . . obtain class certification.").

them. Additionally, Dr. Kriegler's statistical analysis does not establish that Defendant had an unlawful policy or practice of denying second meal breaks especially because, as Defendant concedes, many employees signed a second meal period waiver. This evidence does not indicate that the entire class and subclass were systematically improperly denied second meal breaks.

Rule 23 is not a "mere pleading standard" and the party seeking class certification must "affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014) (quoting *Dukes,* 564 U.S. at 350-51) (emphasis in original). Plaintiffs have not met this standard because they have not affirmatively shown that there are any central questions of law or fact common to the Second Meal Break Class and Meal Break Sub-Class. In other words, Plaintiffs have not established that this class and subclass share an experience of being denied a second meal break rather than voluntarily waiving or declining to take one. The Court therefore recommends denying the motion for class certification as to the Second Meal Break Class and Meal Break Sub-Class.

iii.        *Sub-Class 2: Meal Period Waiver Sub-Class*

Plaintiffs seek to certify the Meal Period Waiver Sub-Class because the meal waivers employees signed gave Defendant a right to revoke the waiver. (ECF Nos. 45 at 3, 45-1 at 24-25.)

a.        Applicable Law Regarding Meal Period Waivers

IWC Order No. 5-2001 provides:

> (D) Notwithstanding any other provision of this order, employees in the health care industry who work shifts in excess of eight (8) total hours in a workday may voluntarily waive their right to one of their two meal periods. In order to be valid, any such waiver must be documented in a written agreement that is voluntarily signed by both the employee and the employer. The employee may revoke the waiver at any time by providing the employer at least one (1) day's written notice. The employee shall be fully compensated for all working time, including any on-the-job meal period, while such a waiver is in effect.

8 Cal. Code Regs. § 11050.

b.        Analysis

According to Plaintiffs, Defendant provides all new hires with a meal waiver that improperly gives *Defendant* a right to revoke the waiver. (ECF No. 45-1 at 24-25.) Plaintiffs

33

contend that this language is facially invalid as a matter of law because "[n]othing in the Wage Order or Statement of Basis contemplates revocation by the employer." (*Id.* at 25.) Defendant argues, among other things, that nothing in the Wage Order or Labor Code prohibits the mutual revocation language that Plaintiffs challenge. (ECF No. 53 at 28.) The Court agrees.

The parties do not dispute that Defendant's meal period waiver permits both Defendant and the employee to revoke it. Here, the applicable meal waiver states:

> This will certify that I regularly work a shift in excess of eight hours and wish to waive one of the two meal periods I would otherwise be entitled to receive under California law. In accordance with the requirements of state law, I hereby voluntarily agree to waive one meal period each day. I understand that, as a result of this waiver, I will receive only one meal period during each day of work and will be paid for all working time, but not for the one duty-free meal period I receive. I also understand that I or the Hospital may revoke this "Meal Period Waiver" at any time by providing at least one day's advance notice in writing of the decision to do so. This waiver will remain in effect until I exercise, or the Hospital exercises, the option to revoke it.
> I acknowledge that I have read the waiver, understand it, and voluntarily agree to its provisions.

(ECF No. 45-3 at 486, 495, 493.)

The plain language of the IWC Order requires the waiver to be voluntary, and permits the employee to revoke the waiver at any time by providing at least one day's written notice. *See* 8 Cal. Code Regs. § 11050. Defendant's meal waiver complies with this requirement on its face. The wage order does not address the employer's right to revoke the waiver either way. Plaintiffs have not cited to any authority, and the Court has found none, which makes an employer's right to revoke a meal waiver unlawful. Although Plaintiffs cite to *Lubin v. the Wackenhut Corp.,* 5 Cal.App.5th 926, 950-51 (2016) in support of their contention that there are no individualized questions involved with this class, *Lubin* involved meal waivers that did not allow the employee to revoke the agreement. In that case, the plaintiff established through deposition testimony that some employees signed meal waivers that did not have a revocation clause at all, while others signed meal waivers that gave the employee the right to revoke the meal waiver at any time *Id.* at 938. The appellate court in *Lubin* reversed the trial court's order granting decertification due to individualized issues. *Id.* at 953. However, the meal waivers only contained revocation clauses that gave the employee the right to revoke the waiver; *Lubin* did not address an employer's right to revoke a meal waiver. *See id.* at 938. Here, Plaintiffs have not alleged or presented any

34

1

2

evidence indicating that Defendant's meal period waivers failed to give employees the right to revoke the agreement.

3

4

5

6

7

8

9

10

Plaintiffs have thus not alleged that Defendant engaged in unlawful conduct that caused a class-wide injury.[9] *See Falcon,* 457 U.S. at 157 (requiring the plaintiff to demonstrate that class members "have suffered the same injury"). While this reasoning turns on the merits of Plaintiffs' claim, courts may deny class certification where Plaintiff fails to allege illegal conduct to the class. *Davidson v. O'Reilly Auto Enterprises, LLC,* 968 F.3d 955, 968 (9th Cir. 2020) (denying certification where the plaintiff did not "implicate any illegal practice"). Put another way, it is Plaintiffs' burden to identify a common legal issue related to illegal conduct justifying certification of a class.

11

12

Because Plaintiffs have not met the commonality requirement, the Court recommends denying the motion for class certification as to the Meal Period Waiver Sub-Class.

13

    iv.    *Class 6: Rest Break Class*

14

15

16

Plaintiffs seek to certify the Rest Break Class for Defendant's failure to authorize or permit ten-minute rest periods for its patient care and non-patient care hourly employees. (ECF Nos. 45 at 3, 45-1 at 25.)

17

    a.    Applicable Law Regarding Rest Breaks

18

IWC Order No. 5-2001 provides:

19

12. Rest Periods

20

21

22

23

24

(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted, as hours worked, for which there shall be no deduction from wages.

25

26

(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one

27

28

_____

[9] Although Plaintiffs describe Defendant's right to revoke as an "intimidation factor," they do not explain how, if at all, Defendant having the ability to revoke a meal waiver and thereby obligating itself to provide an employee with a meal break or to pay a meal period premium is intimidating or otherwise causes any injury. (*See* ECF No. 45-1 at 25.)

1

2
(1) hour of pay at the employee's regular rate of compensation for each workday
that the rest period is not provided.

3
8 Cal. Code Regs. § 11050. As with meal periods, employers are required to make rest breaks

4
available but are not required to ensure that employees actually take their rest breaks. *Cleveland*

5
*v. Groceryworks.com, LLC,* 200 F.Supp.3d 924, 953 (N.D. Cal. 2016). However, "employers

6
must relieve employees of all duties" during their rest breaks and must "relinquish control over

7
how employees spend their time." *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257, 269

8
(2016), *as modified on denial of reh'g* (Mar. 15, 2017).

b.      Analysis

9
        Plaintiffs do not contend that Defendant's rest period policy was facially invalid. Indeed,

10
Plaintiffs submit a copy of Defendant's rest period policy, which provides for fifteen-minute

11
breaks for each work period of four or more hours and payment of one hour of penalty pay for

12
any missed rest period. (ECF No. 45-3 at 483.) According to Plaintiff, despite this compliant

13
policy, Defendant had an unlawful practice of failing to provide relief coverage for rest breaks.

14
(ECF No. 45-1 at 25.) Employees were required to carry Spectralink phones and keep them on

15
during their rest breaks, which amounts to on-duty rest breaks in violation of the law. (*Id.*)

16
        In support of this argument, Plaintiffs submit a declaration from Plaintiff Martha Ochoa

17
stating that she and her coworkers were frequently unable to take meal and rest breaks due to lack

18
of coverage, and they were often not allowed to report missed meal and rest break periods

19
because the director and/or charge nurse would get upset. (ECF No.45-2 at 278-79.) Additionally,

20
she was, at times, required to carry a Spectralink phone during meal and rest breaks and could not

21
leave the premises because the range of the Spectralink phone was only on the hospital premises.

22
(*Id.* at 279.) Plaintiff Rachel Clover similarly declared that she and her co-workers were

23
frequently unable to take breaks due to understaffing and were required to carry a Spectralink

24
phone during breaks. (*Id.* at 273.) A third employee testified that the range of Spectralink phones

25
is limited to the range of Defendant's WiFi system. (ECF Nos. 45-1 at 25, 45-5 at 49.) Plaintiffs

26
also submit deposition testimony from Plaintiffs Ochoa and Clover stating that they received an

27
uninterrupted rest break approximately fifty percent of the time and eighty percent of the time,

28
respectively. (ECF No. 45-5 at 36, 43.)

Defendant, in turn, argues that this evidence does not establish a common policy or practice of denying rest breaks to all members of the class. (ECF No. 53 at 29-30.) Defendant provides declarations from twenty-six employees stating that they understood it was Defendant's policy to provide rest breaks and they always either received these breaks or were paid a premium if their break was missed. (ECF Nos. 53 at 29-30, 53-2.) Defendant also provides declarations from twenty employees stating that they understood they were not supposed to respond to calls during their rest breaks and were required to turn off their devices or hand them off to another employee. (ECF Nos. 53 at 20, 53-2.) Some employees declared that they complied with this practice, and others declared that they sometimes mistakenly took their phone with them and either ignored calls or sometimes opted to respond and state that they were on a break and would respond later. (*Id.*) Defendant additionally provided declarations from employees stating that they were permitted to leave the premises for rest breaks and actually did so. (*Id.*)

On reply, Plaintiffs submitted additional depositions from six employees indicating that sometimes they did not receive rest breaks or took their communication devices with them during rest breaks. (*See* ECF Nos. 57, 57-4.) One employee, Jua Herr, testified that "most" nurses kept their phones with them during breaks and described this as a "practice." (ECF No. 57-4 at 22.) Ms. Herr also testified that she sometimes chose not to take a rest break to catch up on documentation. (*Id.* at 16.) Other employees testified that they were not supposed to take their communication devices with them on breaks but sometimes chose to do so, and also sometimes chose not to take rest breaks, (*Id.* at 39-40, 53, 57, 82-83, 122-23.)

The evidence Plaintiffs have submitted does not demonstrate the existence of a systematic policy or practice requiring employees to miss or take on-duty rest periods. Plaintiff's theory— that some departments were understaffed, some employees were required to carry Spectralink phones and could not leave the premises, and some supervisors were angry when employees reported a missed break—does not apply uniformly class-wide. Even Plaintiffs' declarations do not allege there was a uniform policy or practice. Likewise, while the deposition testimony Plaintiffs submit on reply establishes that some employees chose not to take breaks or chose to keep their communication devices during their breaks, this testimony does not establish a common policy or practice attributable to Defendant to deny breaks. Indeed, the deposition

testimony indicates that the employees considered it a personal choice as to whether or not they took their breaks or carried their communication devices during their breaks, and none of them testified that a supervisor told them to do so. Moreover, Defendant has submitted several declarations from its employees saying they could take their rest breaks.

While this evidence does suggest that some employees, including Plaintiffs and likely including other individuals, were denied their rest breaks, or were required to be in contact during those breaks, it falls short of establishing a common issue or problem addressing the class. *See Dukes,* 564 U.S. at 359 ("Because respondents provide no convincing proof of a companywide . . . policy, we have concluded that they have not established the existence of any common question."); *Campbell v. Vitran Express Inc*, 2015 WL 7176110, at *7 (C.D. Cal. Nov. 12, 2015) ("Courts generally hold that sufficient evidence of an unofficial policy exists where the plaintiff offers multiple declarations from employees attesting to the uniform application of the policy.") (citations omitted); *Amiri v. Cox Commc'ns California, LLC*, 272 F. Supp. 3d 1187, 1196 (C.D. Cal. 2017) ("Plaintiff's allegations about his personal situation do not demonstrate that Defendant had a policy that affected all 'aggrieved employees'[.]"). While the Court is sympathetic to Plaintiffs, it cannot find based on the evidence submitted that there is a common issue throughout the class resulting in a lack of legally compliant rest breaks.

The Court therefore finds that Plaintiffs have not established commonality for the Rest Break Class and recommends that the motion for class certification be denied as to the Rest Break Class.

     v.     *Class 5: Pay Stub Class and Class 7: Waiting Time Penalty Class*

Plaintiffs seek to certify the Pay Stub Class and Waiting Time Penalty Class as derivative classes. (ECF Nos. 45 at 4, 45-1 at 26-27.)

Because the claims of these classes are entirely derivative of the claims of the proposed wage classes, "they meet or fail to meet the commonality and predominance requirements to the same extent." *Pena v. Taylor Farms Pacific, Inc.,* 305 F.R.D. 197, 223 (E.D. Cal. 2015). Indeed, Defendant solely argues that these classes are not amenable to certification because the primary classes are not amenable to certification. (ECF No. 53 at 35.)

///

38

As discussed above, the Court has found the commonality requirement met for the Rounding Class, Rounding Clinical Sub-Class, and On Call/Standby Class. Therefore, the derivative Pay Stub Class and Waiting Time Class meet the commonality requirement for the same reasons.

1.      Rule 23(b)

Given the Court's recommendations regarding Rule 23(a), the Court now looks to whether the Rule 23(b) requirements are met only for the Rounding Class, Rounding Clinical Sub-Class, On Call/Standby Class, Pay Stub Class, and Waiting Time Penalty Class.

Plaintiffs first argue that Rule 23(b)(1)(A) is satisfied because, if the motion is not granted, individual putative class members will file separate lawsuits and one court may rule differently than another. (ECF No. 45-1 at 29-30.) Defendant does not address whether certification under Rule 23(b)(1)(A) is appropriate. (*See* ECF No. 53.)

Here, Plaintiffs ask the Court to enjoin Defendant from engaging in the challenged practices. (ECF No. 1-29.) As to Plaintiffs' request for injunctive relief, class certification is proper under Rule 23(b)(1)(A) because the rule contemplates situations where the Defendant is "obligated to treat members of the class alike." *AmChem,* 521 U.S. at 614 (citation and quotation marks omitted). If class certification were denied and some individuals secured an injunction and others did not, Defendant could be held to "incompatible standards of conduct." Fed. R. Civ. B. 31(b)(1)(A); *see Russel v. Kohl's Dep't Stores, Inc.,* 2015 WL 12748629, at *4 (C.D. Cal. Dec. 4, 2015) (certifying a class under Rule 23(b)(1)(A) where the plaintiffs sought injunctive relief requiring the defendant to refrain from the alleged unlawful conduct). The Court therefore finds that certification under Rule 23(b)(1)(A) is appropriate to the extent Plaintiffs are certifying the classes listed above and seeking injunctive relief.

The Court also finds that certification under Rule 23(b)(3) is appropriate for the Rounding Class, Rounding Clinical Sub-Class, On Call/Standby Class, Pay Stub Class, and Waiting Time Penalty Class. As discussed above, the Court finds that the predominance requirement has been met for these classes and subclasses.

As to superiority, Plaintiffs argue that class resolution "is superior to trying the claims of the approximately 2, 215 putative class members in a piecemeal fashion." (ECF No. 45-1 at 31.)

39

1    Additionally, this case can be effectively managed with the use of Defendant's own timekeeping
2    and payroll records through statistical evidence. (*Id.* at 32.) Defendant argues that its timekeeping
3    and payroll records alone are not sufficient to determine liability for the On Call/Standby Class
4    and instead each employee must be asked each of the numerous applicable factors. (ECF No. 53
5    at 25.)

6    　　　In determining superiority, the Court looks to issues such as class members' interests in
7    individual control of the litigation, the extent of any litigation already begun by class members,
8    the desirability of concentrating the litigation in a particular forum, and the likely difficulties in
9    managing a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D). There has been no showing here
10   that any of the putative class members have a separate interest in individual control of the
11   litigation, or that suits by class members are already pending on these same issues. Moreover, the
12   types of claims at issue here usually involve relatively small amounts of damages, for which the
13   only practical means of seeking redress is class treatment. *See Zinser*, 253 F.3d at 1190 ("Where
14   damages suffered by each putative class member are not large, this factor weighs in favor of
15   certifying a class action."); *see also Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v.*
16   *Las Vegas Sands, Inc.,* 244 F.3d 1152, 1163 (9th Cir.2001) ("If plaintiffs cannot proceed as a
17   class, some—perhaps most—will be unable to proceed as individuals because of the disparity
     between their litigation costs and what they hope to recover.").

18   　　　"Finally, while defendants do raise some issues that they believe will result in difficulties
19   managing the class action at a later stage in this litigation, this does not defeat class certification."
20   *Aldapa,* 323 F.R.D. at 340. "The Ninth Circuit has emphasized that administrative feasibility is
21   not a stand-alone prerequisite to class certification, and that there is a 'well-settled presumption
22   that courts should not refuse to certify a class merely on the basis of manageability concerns.'" *Id.*
23   (*quoting Briseno*, 844 F.3d at 1128). Defendant's main manageability concern with the On
24   Call/Standby Class is not persuasive because, as noted above, the crux of Plaintiff's theory is the
25   application of a uniform policy, which can largely be determined on a class-wide basis.
26   Accordingly, the Court finds that the Rule 23(b)(3) requirement is met and recommends that the
27   motion for certification be granted as to the Rounding Class, Rounding Clinical Sub-Class, On
28   Call/Standby Class, Pay Stub Class, and Waiting Time Penalty Class.

1

## IV.    CONCLUSION AND RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS that:

2.   Plaintiffs' motion for leave to amend (ECF No. 35) be DENIED;

3.   Plaintiffs' motion for class certification (ECF No. 45) be GRANTED IN PART and DENIED IN PART;

4.   The following classes and subclasses be certified:

    a.   All non-exempt hourly employees of Defendant who worked at least one (1) day at the Mercy Medical Center Merced facility from July 13, 2013 to the date of the class certification order and who were paid pursuant to Defendant's rounding policy and practice ("Rounding Class");

    b.   All non-exempt hourly clinical employees of Defendant who worked at least one (1) day at the Mercy Medical Center Merced facility from July 13, 2013 to the date of the class certification order and who were paid pursuant to Defendant's rounding policy and practice ("Rounding Clinical Sub-Class");

    c.   All non-exempt hourly patient care employees of Defendant who worked at least one (1) day at the Mercy Medical Center Merced facility and worked at least one (1) standby shift from January 14, 2015 to the date of the class certification order ("On Call/Standby Class");

    d.   All non-exempt hourly employees of Defendant who worked at least one (1) day at the Mercy Medical Center Merced facility from July 13, 2016 through the date of class certification order who were provided a paystub (a.k.a. wage statement) from Defendant ("Pay Stub Class");

    e.   All California based non-exempt hourly employees of Defendant who worked for Defendant at any time from January 14, 2016 through the date of class certification, who are no longer employed by Defendant and were not paid all their earned wages ("Waiting Time Penalty Class");

5.   Certification be denied as to all other classes and subclasses not specifically addressed in paragraphs 4(a)-(e) above, including the Regular Rate/Overtime Class, the Second Meal Break Class, the Meal Period Waiver Sub-Class, the Meal Break Sub-Class, the

Meal Period Regular Rate Sub-Class, the Rest Break Class, and the Rest Period Regular Rate Sub-Class;

6. The Court find Plaintiffs Robert Van Bebber, Rachel Clover, and Martha Ochoa to be adequate class representatives and confirm Plaintiffs Van Bebber and Ochoa as class representatives for the Rounding Class, Plaintiff Clover as class representative for the Rounding Clinical Sub-Class, Plaintiffs Ochoa and Clover as class representatives for the On Call/Standby Class, and Plaintiffs Van Bebber, Clover, and Ochoa as class representatives for the Pay Stub Class and Waiting Time Penalty Class;

7. The Court find Joseph Antonelli and Janelle Carney of Law Office of Joseph Antonelli and Robert L. Starr and Adam M. Rose of Frontier Law Center to be adequate to represent the class in this proceeding and confirm them as class counsel;

8. The parties be directed to meet and confer promptly upon service of an order adopting these findings and recommendations concerning the submission of a joint stipulated class notice and distribution plan in compliance with Rule 23(c)(2)(B);

9. The parties be directed to file either a stipulated class notice and distribution plan or a notice that no stipulation can be reached within twenty-one (21) days of service of this order. If the parties cannot agree to a class notice or distribution plan, Plaintiffs be directed to submit a proposed class notice and distribution plan within thirty-five (35) days of service of this order, Defendant be given fourteen (14) days following Plaintiffs' submission of a proposed class notice and distribution plan to file any objections thereto, and Plaintiffs be given seven (7) days thereafter to submit a reply; and

10. This matter be referred back to the undersigned for further scheduling and other proceedings consistent with the order adopting these findings and recommendations.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections

within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 29, 2021**                    /s/ *Erica P. Grosjean*
                                                UNITED STATES MAGISTRATE JUDGE

43