UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT VAN BEBBER, on behalf of himself and all others similarly situated and the general public,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>DIGNITY HEALTH d/b/a MERCY MEDICAL CENTER – MERCED, and DOES 1 to 100,<br><br>　　　　　Defendants. | No.  1:19-cv-00264-DAD-EPG<br><br>ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>(Doc. No. 43) |

This matter is before the court on the motion for partial summary judgment filed on behalf of defendant Dignity Health d/b/a Mercy Medical Center – Merced ("Dignity Health" or "MMC"). (Doc. No. 43.)[1] Pursuant to General Order No. 617 addressing the public health emergency posed by the COVID-19 pandemic, defendant's motion was taken under submission

---

[1] The undersigned apologizes for the excessive delay in the issuance of this order. This court's overwhelming caseload has been well publicized and the long-standing lack of adequate judicial resources in this district long-ago reached crisis proportion. While that situation was partially addressed by the U.S. Senate's confirmation of district judges for two of this court's vacancies on December 17, 2021 and June 21, 2022, another vacancy on this court with only six authorized district judge positions was created on April 17, 2022. For over twenty-two months the undersigned was left presiding over approximately 1,300 civil cases and criminal matters involving 735 defendants. That situation resulted in the court not being able to issue orders in submitted matters within an acceptable period of time and continues even now as the undersigned works through the predictable backlog. This has been frustrating to the court, which fully realizes how incredibly frustrating it is to the parties.

on the papers. (Doc. No. 44.) For the reasons explained below, the court will deny defendant's motion for summary judgment.

## BACKGROUND

### A. FACTUAL BACKGROUND

The background set forth below is drawn from defendant's statement of undisputed facts (Doc. No. 43-2), plaintiffs' response thereto (Doc. No. 46-5), and the exhibits cited by the statement and the response, including and particularly the Declaration of Scott L. Sternberg (Doc. No. 43-3) and the Declaration of Brian Kriegler (Doc. No. 46-2).

This is a wage and hour class action suit stemming from various alleged state labor law violations by defendant Dignity Health, an acute care hospital in Merced, California. (Doc. No. 1-29.) Plaintiffs Robert Van Bebber, Martha Ochoa, and Rachel Clover are former Dignity Health employees who were employed by defendant for at least some of the class period, which covers the period from July 13, 2013 to September 8, 2021, the date of the class certification order.

Throughout the class period, defendant employed a rounding policy pursuant to which all employee timeclock entries were rounded either up or down to the nearest quarter-hour. (Doc. No. 43-2 at ¶ 1.) Except for one entry that demonstrated a 65-minute rounding window, no individual employee time entry was rounded by more than seven minutes either up or down. (*Id.* at ¶ 2; Doc. No. 46-5 at ¶ 2.) Defendant's tardiness policy, however, is based on the actual timeclock entry and not the rounding of timeclock entries. (Doc. No. 43-2 at ¶ 7.) Defendant requires employees to start each shift on time, and has a strict policy prohibiting overtime unless the employee has previously obtained approval. (Doc. No. 46-5 at ¶¶ 10–11.) The class affected by defendant's rounding policy consists of at least 2,215 hourly non-exempt employees. (Doc. No. 43-2 at ¶ 8.)

Defendant's expert Scott Sternberg analyzed timeclock records for a random sample of 197 class members, including the three plaintiffs, for the period between July 13, 2013 to July 31, 2020 (the start of the proposed class period to when data was collected for production to plaintiffs). (Doc. No. 43-2 at ¶ 3.) In that sampling, he found there to be 1,299,049.50 total

1 rounded hours and 1,302,424.83 total actual hours, resulting in a "net difference in favor of

2 [d]efendant of 3,375.33 hours," or 0.26% of the total rounded hours.  (*Id.* at ¶¶ 4–5; Doc. No. 43-

3 3 at ¶ 10.)  The sample employees worked 143,636 shifts during the period analyzed.  (Doc. No.

4 43-2 at ¶ 6.)  Expert Sternberg noted that averaging the total lost hours across the total number of

5 shifts over that same time frame resulted in an average of 1.41 minutes lost per shift per employee

6 due to rounding.  (*Id.*; Doc. No. 43-3 at ¶¶ 6, 10.)

7        Plaintiffs' expert Dr. Brian Kriegler noted that not all time on the clock is subject to

8 rounding.  (Doc. No. 46-5 at ¶ 15.)  Rather, defendant's rounding policy only impacts the times

9 that employees clock in or out at the start and end of their shifts and for meal periods.  (*Id.*)  As

10 such, only 28 minutes of a typical work day is subject to rounding.  (*Id.*)  According to plaintiffs,

11 averaging the minutes lost across the minutes subject to rounding in the sample analyzed resulted

12 in an average of 5.94 minutes lost per 28 minutes subject to rounding per shift, or a net difference

13 of 21.2% in favor of defendant.  (*Id.*; Doc. No. 46-2 at ¶¶ 42–44.)

14        Analyzing a random sampling of data from 199 class members, plaintiffs' expert noted

15 that not all of the time lost to rounding is equal—some of the lost minutes in defendant's favor

16 was time that, if counted, would have been subject to overtime or double time due to the length of

17 the employee's shift.  (Doc. Nos. 46-5 at ¶ 4; 46-2 at ¶ 29.)  Dr. Krieger calculated the net

18 difference between rounded time and actual time to be 3,760.62 hours which, when accounting

19 for the difference in overtime and double time, equals to 6,712.76 hours of "straight time" pay

20 (base rate of pay prior to overtime premiums).  (Doc. Nos. 46-5 at ¶ 4; 46-2 at ¶ 29.)  In this

21 random sample, Dr. Krieger found that 77.4% of employees experienced undercompensated work

22 time due to the rounding policy resulting in fewer paid rounded hours than actual hours worked.

23 (Doc. Nos. 46-5 at ¶ 6; 46-2 at ¶ 41.)  When accounting for overtime premiums, Dr. Krieger

24 calculated that 80.9% of employees were underpaid with an average difference in earnings of

25 $1,459.62 per person.  (Doc. Nos. 46-5 at ¶ 6; 46-2 at ¶ 41.)

26 **B.  PROCEDURAL BACKGROUND**

27        Based on the foregoing, plaintiffs have asserted the following causes of action in their

28 second amended complaint:  (1) violations of California Business and Professions Code § 17200;

(2) unpaid wages and penalties pursuant to California Labor Code §§ 218, 226, 510, 511, 1194, and 1998 (i.e. overtime); (3) failure to pay all wages due to illegal rounding; (4) failure to provide meal breaks; (5) failure to provide accurate itemized wage statements pursuant to California Labor Code § 226; (6) violations of the Private Attorneys General Act (California Labor Code § 2698–2699); (7) failure to provide rest periods; and (8) failure to pay wages of terminated or resigned employees.  (Doc. No. 1 at 3; 1-29.)

On August 26, 2020, defendant filed the pending motion seeking partial summary judgment in its favor as to plaintiffs' third cause of action for failure to pay all wages based upon alleged illegal rounding.  (Doc. No. 43-1.)  On September 22, 2020, plaintiffs filed an opposition to defendant's motion and a request for judicial notice.  (Doc. Nos. 46, 46-3.)  Defendant filed its reply thereto and objections to plaintiffs' request for judicial notice on September 28, 2020  (Doc. Nos. 47, 47-1.)

While defendant's motion for summary judgment was pending, plaintiffs filed a motion to certify the class on September 4, 2020.  (Doc. No. 45.)  After the motion was fully briefed, the undersigned issued an order on September 8, 2021, adopting the magistrate judge's findings and recommendations granting in part and denying in part plaintiffs' motion for class certification.  (Doc. No. 79.)  In relevant part, the order certified the following class and sub-class related to the rounding claim at issue in the pending motion for partial summary judgment:

> a. All non-exempt hourly employees of Defendant who worked at least one (1) day at the Mercy Medical Center Merced facility from July 13, 2013 to the date of the class certification order and who were paid pursuant to Defendant's rounding policy and practice ("Rounding Class");
>
> b. All non-exempt hourly clinical employees of Defendant who worked at least one (1) day at the Mercy Medical Center Merced facility from July 13, 2013 to the date of the class certification order and who were paid pursuant to Defendant's rounding policy and practice ("Rounding Clinical Sub-Class")[.]

(*Id.* at 4.)

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, as plaintiff does here, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for

5

summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The opposing party also must demonstrate the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## ANALYSIS

### A.   Request for Judicial Notice

Plaintiffs filed a request for judicial notice in support of their opposition to defendant's motion for summary judgment. (Doc. No. 46-3.) Plaintiffs seek judicial notice of the following: (1) the declaration binder, exhibit binder, and notice of lodging deposition excerpts filed in support of their motion for class certification (Doc. Nos. 45-2, 45-3, 45-5); (2) a law review

article written by Elizabeth C. Tippett entitled "How Employers Profit From Digital Wage Theft Under The FLSA;" (3) a law review article written by Elizabeth C. Tippett, *et al.* entitled "When Timekeeping Software Undermines Compliance;" (4) a copy of the 2002 Update of the DLSE Enforcement Policies and Interpretations Manual (Revised) §§ 47.1- 47.2 ("DSLE Enforcement Manual"); and (5) a copy of the California Civil Courtroom Handbook and Desktop Reference, § 8:37 (2018). (Doc. No. 46-3 at 2.) Defendant filed objections to plaintiffs' request for judicial notice, arguing that the two Tippett law review articles are subject to reasonable dispute and are therefore outside the scope of judicial notice. (Doc. No. 47-1 at 2–3.)

Under Federal Rule of Evidence 201, the court may take judicial notice of matters of public record if the facts are not "subject to reasonable dispute" because they are "generally known within the trial court's territorial jurisdiction; or (2) it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001); see Fed. R. Evid. 201(b). Defendant's arguments as to the Tippett articles are clearly correct and persuasive. Law review articles are not "'fact[s]' for which judicial notice is proper." *Lingad v. Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1146 (E.D. Cal. 2010). Plaintiffs' request for judicial notice will be denied as to both law review articles authored by Elizabeth C. Tippet.

Additionally, a party "need not seek judicial notice of documents filed in the same case." *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) (citing *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 960 (N.D. Cal. 2014)). The declaration binder, exhibit binder, and notice of lodging deposition excerpts were filed in support of plaintiffs' motion for class certification. (Doc. Nos. 45-2, 45-3, 45-5.) These documents are already a part of the record in this case, and, if appropriate, the court would consider that record in ruling on the pending motion. *Perez v. DNC Parks & Resorts at Sequoia*, No. 1:19-cv-00484-DAD-SAB, 2020 WL 4344911, at *2 (E.D. Cal. July 29, 2020). As such, plaintiffs' request for judicial notice of the documents filed in support of their motion for class certification in this same action will also be denied. Next, the California Civil Courtroom Handbook and Desktop Reference is a treatise compiling California case law, statutes, and rules of court as relevant to

1   civil litigation in California. *See* California Civil Courtroom Handbook and Desktop Reference.
2   "Failure . . . to lay a foundation as to the authoritative nature of a treatise requires its exclusion
3   from evidence because the court has no basis on which to view it as trustworthy." *Baker v.*
4   *Barnhart*, 457 F.3d 882, 891 (8th Cir. 2006) (quoting *Schneider v. Revici*, 817 F.2d 987, 991 (2d
5   Cir. 1987)).  Here, plaintiffs have not sufficiently laid a foundation as to the authoritative nature
6   of the California Civil Courtroom Handbook and Desktop Reference.  Therefore, the court will
7   exercise its discretion and decline to take judicial notice of the cited treatise.  Of course, the court
8   will consider citation to the treatise as supporting authority in analyzing the parties' arguments
9   below.  Finally, the DSLE Enforcement Manual is a "public record[] properly the subject of
10  judicial notice." *Lockhart v. County of Los Angeles*, No. 2:07-cv-01680-ABC-PJW, 2007 WL
11  9627609, at *4 (C.D. Cal. Oct. 16, 2007) (taking judicial notice of the DLSE Enforcement
12  Manual).  Therefore, the court will take judicial notice of only the DSLE Enforcement Manual.

13  **B.     Motion for Partial Summary Judgment**

14  Under federal law, rounding employees' timekeeping records is an acceptable practice
15  when the practice "averages out" and "is used in such a manner that it will not result, over a
16  period of time, in failure to compensate the employees properly for all the time they have actually
17  worked." 29 C.F.R. § 785.48(b).  Moreover, the California appellate courts have recognized that
18  "time-rounding is a practical method for calculating work time and can be a neutral calculation
19  tool for providing full payment to employees." *See's Candy Shops, Inc. v. Superior Court*, 210
20  Cal. App. 4th 889, 903 (2012).  The federal rounding rule applies to California state labor claims
21  as long as "the employer applies a consistent rounding policy that, on average, favors neither
22  overpayment nor underpayment." *Id.* at 901.  Rounding policies have been found to violate this
23  policy when they only round down and therefore "systematically undercompensate employees."
24  *Id.* at 902.  "Whether a rounding policy will result in undercompensation over time is a factual
25  issue." *David v. Queen Valley Medical Center*, 51 Cal. App. 5th 653, 664 (2020) (internal
26  citation and emphasis omitted).  The Ninth Circuit has applied the same analysis as the California
27  Court of Appeal did in the *See's Candy* decision in determining that a neutral policy that rounded
28  to the nearest quarter-hour is lawful under California law. *See Corbin v. Time Warner*

*Entertainment-Advance/Newhouse Partnership*, 821 F.3d 1069, 1075-79 (9th Cir. 2016).

To be lawful, a rounding policy must be "neutral, both facially and as applied." *Id.* at 1076 (quoting *See's Candy*, 210 Cal. App. 4th at 903). A rounding policy is facially neutral if it "gives equal opportunity to round up or down and the employers' other policies do not interfere with its application." *Feltzs v. Cox Commc'ns Cal., LLC*, No. 4:19-cv-02002-JVS-JDE, 2021 WL 5050259, at *4 (C.D. Cal. Oct. 27, 2021) (citing *Corbin*, 821 F.3d at 1078–79; *See's Candy*, 210 Cal. App. 4th at 902). To determine whether a rounding policy is neutral as applied, courts consider the following factors:

> (1) whether the rounding policy increased or decreased the compensation of the class as a whole; (2) the relative magnitude of any net change in compensation due to rounding compared to total wages earned; (3) what percentage of shifts are rounded in favor of the employee or rounded in favor of the employer; (4) what percentage of employees had a net increase or decrease in compensation as a result of the rounding policy.

*Id.* None of the four factors are dispositive. Moreover, one plaintiff's net decrease in his compensation is insufficient to demonstrate that the rounding policy is biased against employees. *See Corbin*, 821 F.3d at 1076–77; *David*, 51 Cal. App. 5th at 664. Even if the policy results in a reduction of compensation in over half the number of total shifts, the policy may still be found to be lawful. *See Ferra v. Loews Hollywood Hotel, LLC*, 40 Cal. App. 5th 1239, 1253–55 (2019) (finding a rounding policy to be neutral where it rounded both up and down and the employer had a grace period for its tardiness policy), *reversed on other grounds*, 11 Cal. 5th 858 (2021). For example, if a bare majority of employees experience a net decrease in compensation due to the rounding policy, the policy may still be lawful if the total hours of compensation gained across all class members exceeds the total number of hours of compensation lost to rounding. *See Feltzs*, 2021 WL 5050259 at *5 (citing *AHMC Healthcare, Inc. v. Superior Court*, 24 Cal. App. 5th 1014, 1027–28 (2018)).

Defendant Dignity Health seeks summary judgement in its favor on plaintiff's third cause of action for failure to pay all wages due to illegal rounding because it maintains that its rounding policy is valid as a matter of law. (Doc. No. 43-1 at 5–6.) Defendant asserts that "there can be no dispute [that its] rounding practice is neutral on its face." (*Id.* at 6.) Plaintiffs do not dispute that.

1  (*See* Doc. No. 46 at 8.) Indeed, nor can they since defendant's rounding policy rounded all
2  employee timeclock entries either up or down to the nearest quarter-hour. (Doc. No. 43-2 at ¶ 1.)
3  Except for a single anomalous entry, no individual time entry was rounded by more than seven
4  minutes either up or down. (*Id.* at ¶ 2; Doc. No. 46-5 at ¶ 2.) However, a facially neutral
5  rounding system is an insufficient basis upon which to grant summary judgment as to an illegal
6  rounding claim, because the validity of a rounding policy also depends on "whether a particular
7  policy is neutral as applied[, which] is based on the factual circumstances of each individual
8  case." *Feltzs*, 2021 WL 5050259 at *6. The court turns to this "as applied" inquiry below.

9  Defendant Dignity Health contends that its "rounding system is also neutral as applied"
10 because, it contends, "overall compensation was minimally affected by the practice." (Doc. No.
11 43-1 at 6, 10.) To support its argument in this regard, defendant "selectively draws on isolated
12 statistics while ignoring the larger context that renders these facts distinguishable." *Feltzs*, 2021
13 WL 5050259 at *7–8 (denying a motion for summary judgment with respect to an illegal
14 rounding claim because the context of the cited statistics distinguished the defendant's rounding
15 policy from "other rounding policies that other courts found to be neutral in application"). As the
16 California Court of Appeal has noted, "[n]othing in our analysis . . . precludes a trial court from
17 looking at multiple datapoints to determine whether the rounding system at issue is neutral as
18 applied." *AHMC*, 24 Cal. App. 5th at 1028. An examination of the evidence before the court on
19 summary judgment demonstrates that the facts defendant relies upon are distinguishable from the
20 cited decisions in which rounding policies were found to be neutral as applied.

21 For example, defendant notes that in the *Ferra* decision, the court "affirmed summary
22 judgment in favor of an employer on a rounding claim even though the plaintiff lost time in a
23 majority of her shifts" and expert analysis showed that "rounding *reduced* paid time during 54.6%
24 of shifts and had no impact or favored employees during 45.3% of shifts." (Doc. No. 43-1)
25 (citing *Ferra*, 40 Cal. App. 5th at 1253–54). However, the evidence submitted on summary
26 judgment in this case demonstrates that more than just the "bare majority of employees los[t]
27 compensation." *See id.* at 1254 (citing district court cases in which rounding policies were found
28 lawful despite 53% and 55.8% of employees losing compensation due to rounding). Here,

plaintiffs have opposed summary judgment by presenting evidence "that the class as a whole lost time" during the eight-year class period, and that 77.4% of the employees sampled "personally lost time due to defendant's rounding policy." (Doc. Nos. 46-5 at ¶ 6; 46-2 at ¶ 41); *see Feltzs*, 2021 WL 5050259 at *7 (distinguishing *Ferra* because plaintiffs presented evidence that "the class as a whole lost time due to rounding, and that approximately 80% of employees personally lost time due to rounding"). If the evidence presented by plaintiffs on summary judgment is accepted as true, as it must be on summary judgment, this would not be a case in which a "bare majority of employees" were undercompensated due to the application of defendant's rounding policy. *See Ferra*, 40 Cal. App. 5th at 1254.

Defendant also notes that in *AHMC*, the court held that "[t]he fact that a bare majority . . . lost minor sums of money during a discrete period did not create an issue of fact as to the validity of the system," despite the expert finding that "employees lost more time than they gained due to rounding from an overall perspective[, . . . and employees] lost an average of 2.33 minutes per shift." (Doc. No. 43-1 at 8) (quoting *AHMC*, 24 Cal. App. 5th 1027). However, as the district court in *Feltzs* pointed out, the *AHMC* "2.33 minute average loss was only for one subset of employees who experienced a net reduction in hours." *Feltzs*, 2021 WL 5050259 at *7. The data in this case is more analogous to that presented in *Feltzs* and shows, according to defendant's own expert, a loss of compensation for actual time worked "averaged across all shifts for all employees, regardless of whether an employee personally experienced a net reduction or increase in hours from rounding." *Id.*; (Doc. No. 43-3 at ¶¶ 6, 10.) Furthermore, in *AHMC*, the parties stipulated to the accuracy of the expert's findings and did not dispute the evidence that the expert had relied upon. *AHMC*, 21 Cal. App. 5th at 1018. Here, however, plaintiffs challenge the methodology employed by defendant's expert and the weight to be accorded to his testimony. (Doc. No. 46 at 14–15.) Plaintiffs' expert clarifies that only 28 minutes of a typical work day— the times employees clock in or out at the start and end of their shifts and for meal periods—are impacted by defendant's rounding policy. (Doc. No. 46-5 at ¶ 15.) Averaging the minutes lost across the minutes subject to rounding results in an average of 5.94 minutes lost per 28 minutes subject to rounding per shift, or a net reduction of 21.2%, a drastically larger percentage of loss

than the 0.26% statistic defendants rely upon in moving for summary judgment in their favor. (*Id.*)  A dispute as to the weight to be given to the expert's testimony, and to any evidence for that matter, is an issue for the fact-finder to resolve.  The court cannot on summary judgment make any credibility determinations as to the opinions presented by the parties' experts.  *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) ("Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury.")

Defendant Dignity Health's final argument is that its rounding policy is neutral as applied because "the difference between rounded and unrounded timeclock entries for a sampling of proposed class members was approximately 3,375 hours in [d]efendant's favor, which is a mere 0.26% of the approximately 1.3 million total hours in the sample." (Doc. No. 47-1 at 5.) Defendant relies on the state appellate court decision in *David*, which affirmed summary judgment on a rounding claim because the 0.26% aggregate deduction in hours from rounding was "statistically meaningless." *David*, 51 Cal. App. 5th at 664.  However, the court in *David* only had before it the data for a single plaintiff who claimed to have been undercompensated for 7.75 hours of wages. *Id.* at 665.  That is far from the case in the instant matter.  Here, the evidence on summary judgment shows that the class as a whole was undercompensated over the eight-year class period. (Doc. No. 43-3 at ¶ 10.)  In a class of at least 2,215 hourly non-exempt employees, defendant's own expert found that a sample of just 197 of the class members, less than ten percent of the entire class, was undercompensated by 3,375.33 hours. (*Id.*)  Plaintiff's expert similarly found that a sample of 199 class members was undercompensated by 3,760.62 actual hours worked.[2]  It certainly appears to be possible that, if only 10% of the entire class was

---

[2]  Plaintiffs' expert explains that some of the undercompensated time occurred during shifts when the class members would have been eligible for overtime or double time.  (Doc. No. 46-2 at ¶ 29.)  Plaintiff's expert calculates that the value of the 3,760.62 hours of undercompensated time, when accounting for overtime and double time pay, equates to 6,712.76 hours of straight time pay.  (*Id.* at ¶ 29.)  For the purposes of the pending motion for summary judgment, the court need not and therefore does not discuss the monetary value of the undercompensated hours. All references to the number of hours undercompensated refers to the difference between rounded time and actual time worked.

undercompensated by over 3,000 hours, the entire class could well be undercompensated by tens of thousands of hours. *See Feltzs*, 2021 WL 5050259 at *7 (distinguishing the 0.28% aggregate reduction in hours from the situation in *David* because the evidence showed the class as a whole was undercompensated during the class period "with an alleged undercompensation of more than nine thousand hours of wages"); *cf. Corbin*, 821 F.3d at 1079 (finding a rounding policy to be neutral as applied to the plaintiff without evaluating the data as to the rest of the class). Tens of thousands of hours of wages cannot be said to be "statistically meaningless," even despite it accounting for a 0.26% reduction of aggregate hours worked.[3] *See Feltzs*, 2021 WL 5050259 at *7 (explaining that a minor percentage of aggregate reduction in hours is not dispositive when large amounts of hours are at stake). Furthermore, the relevant statistic of percentage of hours reduced could be much higher if one were to adopt the method of calculation employed by plaintiffs' expert, who disagrees with the significance of the 0.26% aggregate reduction of hours statistic presented by defendant's expert. (Doc. No. 46-5 at ¶ 15.) Averaging the minutes lost across the minutes subject to rounding per shift (as opposed to across total minutes worked, the calculation performed by defendant's expert) results in an average of 5.94 minutes lost per 28 minutes subject to rounding per shift, or a net reduction of 21.2%. (*Id.*) A 21.2% net reduction, if determined to be the relevant statistic, is certainly a far cry from the "statistically irrelevant" 0.26% deduction of hours worked for the individual plaintiff in *David*. *See David*, 51 Cal. App. 5th at 664. However, once again, the weight of the statistical and other evidence presented by the parties' expert is a question for a jury to decide at trial. *See City of Pomona*, 750 F.3d at 1044.

After reviewing the evidence presented on summary judgment by both parties, the court concludes that defendant has not established that its rounding policy is neutral as applied as a matter of law.[4] Although it is undisputed that Dignity Health's rounding policy is facially neutral,

---

[3] Indeed, if undercompensation of thousands of hours of wages were to be considered so statistically meaningless that summary judgment must be granted merely because the aggregate reduction in hours is a low percentage, then there would be little point in wage and hour class action litigation.

[4] Plaintiffs also argue that enforcement of defendant's tardiness policy and strict overtime policy in conjunction with Dignity Health's rounding policy results in rounding that is not neutral in

defendant has not shown that its policy is sufficiently similar to other rounding policies that courts have found to be neutral in application.  Rather, the evidence critical to that determination is disputed.  As such, the court finds that defendant has not established that it is entitled to summary judgment as to plaintiffs' third cause of action for failure to pay all wages due to illegal rounding.

**CONCLUSION**

For all of the reasons explained above:

1. Defendant's motion for summary judgment (Doc. No. 43) is denied in its entirety;
2. The Clerk of the Court is directed to now reassign this case to U.S. District Judge Ana I. deAlba and the parties are advised that all future filings in this case shall bear the new case number of 1:19-cv-00264-ADA-EPG; and
3. The parties are directed to contact Courtroom Deputy Mamie Hernandez at (559) 499-5652, or MHernandez@caed.uscourts.gov, within fourteen days of service of this order regarding the rescheduling of the Final Pretrial Conference and Jury Trial in this action.

IT IS SO ORDERED.

Dated:   **September 6, 2022**              _____
                                              UNITED STATES DISTRICT JUDGE

---

application.  (Doc. No. 46 at 8–10.)  However, because the court finds that defendant has not shown that its rounding policy is neutral as applied even without the joint effects of the tardiness and overtime policies, the court need not now address this argument.